234 S.W.2d 593 (1950)
SAMS
v.
ADAMS TRANSFER & STORAGE CO. et al.
No. 41635.
Supreme Court of Missouri, Division No. 2.
November 13, 1950.
Motion for Rehearing or for Transfer to Denied December 11, 1950.
Trusty, Pugh & Green, S. L. Trusty, G. W. Green, Jr., and Enos A. Axtell, all of Kansas City, for appellant Roger Sams.
Arthur C. Popham, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for appellant Adams Transfer & Storage Co.
Charles L. Carr, A. C. Trippe, and Hogsett, Trippe, Depping, Houts & James, all of Kansas City, Mo., for respondent, Kansas City Public Service Co.
Motion for Rehearing or for Transfer to Court en Banc Denied December 11, 1950.
WESTHUES, Commissioner.
Leona Sams filed this suit to recover damages for personal injuries she received *594 when a truck of the defendant Adams Transfer and Storage Company struck a streetcar of the Kansas City Public Service Company at the intersection of 16th Street and Main Street in Kansas City, Missouri. Mrs. Sams who was a passenger on the streetcar involved in the collision joined both companies as defendants. The Public Service Company filed a claim against the Adams Company for damages to its streetcar. While the suit was pending, Mrs. Sams died, and her husband, the plaintiff Roger Sams, was, as administrator of the estate, substituted as party-plaintiff. A trial resulted in a verdict for plaintiff in the sum of $10,000 against Adams, a verdict in favor of the defendant Public Service Company as to plaintiff's claim, and a verdict in favor of the Public Service Company for $10 against Adams for damages to the streetcar. Plaintiff appealed from the adverse judgment in favor of the Public Service Company and Adams appealed from both judgments against it. The Public Service Company seems to be satisfied to take the $10 awarded for the damages to its streetcar.
In appellant Adams' brief the point is made that the evidence of the truck driver showed that the brakes were in good condition shortly before the collision and failed suddenly and without warning; that this evidence was introduced by the defendant Public Service Company and therefore the negligence of Adams was a question of fact and not a question of law. It is urged that the instructions given at the request of the Public Service Company were erroneous because the question of whether Adams was negligent was treated as a question of law.
The collision in question occurred on November 1, 1946, at about 11:00 A.M. It was a dry, clear day. The streetcar involved was traveling north on Main Street and the truck east on 16th Street. Main Street with double streetcar tracks is 52 feet wide and 16th Street is 31 feet wide. There is a slight upgrade on Main Street toward the north and considerable downgrade on 16th Street toward the east and Main Street. The driver of the truck testified that as he was approaching Main Street, he stepped on the foot brake and found that it was out of commission. He then reached for the hand brake but the best he could do was to keep the truck, which was then going about 25 miles per hour, from increasing speed. He testified that he sounded the horn of the truck continuously from that time until the truck struck the streetcar. He stated that he turned to the left at Main Street in an attempt to go north on the west side of the streetcar but because of the speed of the truck was unable to make the turn, and the truck struck the streetcar a few feet back of where the motorman was stationed. The truck was then traveling in a northeasterly direction. The truck driver stated that he had made two stops that morning and that the vacuum booster brakes operated by a foot pedal were working efficiently but when he attempted to use them east of Baltimore they failed. As we review the evidence of the truck driver, Adams was guilty of negligence as a matter of law. Conceding that the vacuum booster brakes were working efficiently that morning and failed suddenly, the evidence shows the contrary as to the hand brake.
It is agreed that under the law the truck was required to be equipped with two sets of adequate brakes in good working order. Sec. 8387(c), Mo.R.S.A., 1939. The driver of the truck stated that when the vacuum booster brakes failed he attempted to use the hand brake which "seemed to hold it (the truck) from going much faster but it wouldn't bring it to a stop." There is no evidence in this record that the hand brake failed suddenly. The only inference to be drawn from the evidence is that the hand brake was weak, inadequate, and inefficient. Adams in its brief stated that the evidence disclosed the brakes were regularly inspected. The driver did testify that "The equipment is inspected regularly by the shop." As to the meaning of "regularly" we are left in the dark. The witness may have meant yearly, monthly, or daily. He was asked, "You don't know how frequently the equipment is inspected?" He answered, "No, I don't." So far as the record shows the brakes may not have been inspected for months. Enough has been said to show *595 that under the evidence it must be ruled that Adams was guilty of negligence as a matter of law. The only case cited in support of the contention made by Adams is Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625. As we read that case it is authority against Adams' theory. The facts in the two cases were similar except that the collision in the Lochmoeller case was very slight and the brakes on the truck failed when an attempt was made to stop the truck at the stop sign and within a few feet of the streetcar. The plaintiff submitted his case to a jury on the charge of negligence of defective brakes as a question of fact. The owner of the truck introduced evidence that the brakes were up to the time of the collision in good working order and that without warning a small gasket had blown out of the braking mechanism. The court held that plaintiff had submitted the question of negligence as one of fact and therefore could not contend on appeal that it was a question of law. The court went on to say that where a plaintiff showed that a collision occurred because of the failure of adequate brakes negligence could be inferred but the defendant would be permitted to show what had caused the brakes to fail. We quote from the opinion and include the authorities there cited. Note what was said, 137 S.W.2d loc. cit. 630 (6-8): "Ordinarily such an excuse would require the proof of something occurring wholly without the fault of the person charged with the violation, which had made it impossible for him to comply with the requirement of the statute or ordinance at the moment complained of, and which due care and prudence could not have guarded against. Where such character of proof appears from the defendant, the question of whether his technical but unintentional violation of the statute or ordinance amounted to actionable negligence is one for the jury to determine from all the facts and circumstances shown by the evidence, and it would only be where, admitting the violation, he failed to offer any legal excuse therefor, that negligence could be said to be established as a matter of law. Berkovitz v. American River Gravel Co., 191 Cal. 195, 215 P. 675; McDermott v. McKeown Transportation Co., 263 Ill.App. 325; Conder v. Griffith, 61 Ind.App. 218, 111 N.E. 816; Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552; Dohm v. R. N. Cardozo & Bro., 165 Minn. 193, 206 N.W. 377; Brotherton v. Day & Night Fuel Co., 192 Wash. 362, 73 P.2d 788; 45 C.J. 731."
No evidence was produced in the case before us of any legal excuse why the hand brake was inadequate. The instructions given on behalf of the Public Service Company were therefore not erroneous. Point II of Adams' brief reads as follows:
"Public Service Company's instructions 2-b, 2-c and 4-e erroneously limited its duty to deceased to due care, which is ordinary care, and so prejudicially emphasized the liability of this defendant.
"Cases supra."
The instruction given by the trial court at the request of Adams contained the same phraseology. Note the following portion of instruction la: "* * * and if you find he could and would by due care have done so by the means at hand and with safety to the streetcar and those on it after he knew or by the use of due care could have known that a collision with the truck was impending and imminent, * * *."
The defendants at the trial agreed as to the wording of their instructions as to the degree of care and therefore cannot complain on appeal. However, we must again deal with this question when we reach the same point made by the plaintiff in his brief. We shall do so after disposing of the last point made by Adams wherein the claim is made that the verdict is grossly excessive.
Adams in its brief related the injuries of the deceased as follows:
"Deceased was about 63 Years old at the time of her injury. She had suffered from high blood pressure for many years. She was previously employed at Donnelly Garment Company, but had been ill and off work on account of her high blood pressure for about ten weeks prior to her injury. In the collision her head and face were cut by glass, her face was swollen and *596 discolored. The fourth and fifth ribs on the left side, high under the arm pit, were fractured without misalignment. Both bones in the left leg were fractured two or three inches above the ankle joint with fragmentation and a possible nerve injury; her leg was placed in a cast which was later removed and an open incision made for reduction of the fractures and pins were placed and later removed, July 25, 1946. X-rays showed deceased had an unstable spine which was susceptible to violence. The motions of her ankle were limited after the pins were removed, but the results were good, the large bone being in perfect position. The left thigh was one inch smaller in circumference than the right, and the left calf one-half inch smaller in circumference than the right because of atrophy following the injury. Mrs. Sams died November 13, 1947, about 19 months after her injury. During all of that time she complained of pain in her head, legs and back.
"She was in the hospital approximately for a month after her injury, was then bedfast a month, and then in a wheelchair for three months. Plaintiff's instruction E limited recovery to damages for physical pain and mental suffering."
The above statement is not so favorable to plaintiff as the evidence justified. However, we are of the opinion that it is evident that the verdict is not grossly excessive when compared with verdicts in other cases. See Bowman v. Standard Oil Co., 350 Mo. 958, 169 S.W.2d 384, loc. cit. 388, 389(11); Mooney v. Terminal R. Ass'n of St. Louis, 353 Mo. 1080, 186 S. W.2d 450, loc. cit. 456(13); Adelsberger v. Sheehy, 336 Mo. 497, 79 S.W.2d 109, loc. cit. 114(5-7).
The Public Service Company in its brief says that its motion for a directed verdict as to liability to plaintiff should have been sustained because the evidence did not show negligence on part of the streetcar operator. This contention must be sustained.
The charge of negligence as submitted in plaintiff's instruction was failure of the motorman to exercise the highest degree of care to maintain a lookout for the purpose of avoiding a collision with the Adams truck. It is contended that if the motorman had kept a proper lookout, he would have seen the truck approaching Main Street and would have noticed that the truck was not going to stop. Let us examine the evidence on this point. The streetcar was struck when the front end thereof was at about the north line of the intersection. The evidence of the truck driver and other witnesses was that when the front end of the streetcar had reached the center of the intersection, the truck was at least 50 feet west of the west line of Main Street and about 80 feet from the streetcar. Therefore, when the streetcar was entering the intersection the truck must have been more than 170 feet from the intersection. The streetcar traveled the last 15 feet before it was struck while the truck in the same time covered a distance of more than 80 feet. The motorman testified he first noticed the truck when the streetcar was about 8 or 10 feet out into the intersection and the truck was then 150 to 200 feet to the west. That evidence as to the distance the truck was to the west is consistent with the physical facts and with what occurred later.
A witness named Thompson testified that just prior to the accident he was driving a truck and entered 16th Street from the north at Baltimore which is one block west of Main Street; that when he was attempting to make a left hand turn from Baltimore into 16th Street and just as he was in the center of the intersection, he heard a horn blowing to his right; that he stopped to let the Adams truck pass ahead of him going east on 16th Street although the red light was against east and west traffic. Thereupon he followed the Adams truck to Main Street and saw the collision. The evidence of Thompson corroborates that of the motorman. We find, therefore, that had the motorman looked to the west as he entered the intersection he could have seen the truck about 170 feet or more away and perhaps he could have heard the horn sounded. There was at that time no apparent danger of a collision. The Adams truck running at a speed *597 of 25 miles per hour could have been stopped with ease if the brakes had been in working order. Appellant Sams says that a jury could also find that the motorman failed to see two people frantically waving their hands in warning. The difficulty with this contention is that the motorman could not have seen this waving unless he looked around to the back and the record does not definitely disclose that two people were waving in warning. A passenger sitting at the rear of the streetcar saw one man waving. A witness, J. Frank Brady, testified that he was at the southwest corner of the intersection before the collision occurred. He stated that he realized that there would be a collision when the streetcar was 8 or 10 feet into the intersection; that he waved his arms toward the truck driver and then ran to a telephone to call the police and an ambulance. He heard no horn sounded by the truck and stated that the motorman did not see the truck. He was asked, "How do you know the motorman didn't see him?" He answered, "Because he had traveled too far to see him coming." To the question, "That's your judgment?" he responded, "That's my judgment on that." It is evident that the motorman had passed Mr. Brady before the latter waved toward the truck driver. It is also to be noted that neither Brady nor Thompson, who was following the Adams truck in another truck, heard any horn sounded by the driver of the Adams truck while in the block between Baltimore and Main Street. These two witnesses were watching the Adams truck and were at attention.
The motorman had the right to assume that the truck would be stopped before crossing Main Street. Jordan v. St. Joseph Ry., Light, Heat, and Power Co., Mo. Sup., 38 S.W.2d 1042, loc. cit. 1044(3); 60 C.J.S., Motor Vehicles, § 361, page 859; Wright v. Barron, 318 Mich. 409, 28 N.W. 2d 278, loc. cit. 280(6). The motorman not only had the duty to keep a lookout to the west but also ahead and to the east. There were no facts proven in this case from which the motorman could have concluded that the truck could not stop at the time the streetcar was entering the intersection.
This conclusion renders it unnecessary to consider assignments of error with reference to the instructions.
The judgments are in all respects affirmed.
BOHLING and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court
All concur.