Vesta G. RODDY, (Plaintiff) Respondent,

v.

Freddie Edward FRANCIS,
(Defendant) Appellant.

No. 30822.

St. Louis Court of Appeals.
Missouri.

Sept. 19, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied Oct. 17, 1961.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for defendant-appellant.

Frederick E. Steck, Sikeston, for plaintiff-respondent.

PAUL VAN OSDOL, Special Commissioner.

In this action plaintiff, Vesta G. Roddy, had verdict for $3,000 for personal injuries sustained when the eastbound 1958 Ford, in which she was riding and which her husband was driving, collided with the rear end of a 1954 Chevrolet which had been brought to a stop by defendant, Freddie Edward Francis, in the eastbound lane of the 18-foot concrete pavement of Highway 72 at a point about 1 mile east of Fredricktown. Defendant has appealed from the ensuing judgment.

Plaintiff's case was submitted on primary negligence of defendant in bringing his vehicle to a sudden stop without giving a timely warning signal; and on negligence under the humanitarian rule in failing to speed up, or speed up and turn his vehicle southwardly off of the pavement and onto the level eight-foot shoulder south of the highway.

Herein upon appeal, defendant-appellant contends the trial court erred in submitting plaintiff's case to the jury; and, in the alternative, defendant contends the trial court erred in instructing the jury.

The collision occurred at about 3:40 one Sunday afternoon in early October. Plaintiff and her husband, residents of Rock View, were joint owners of their 1958 Ford in which, as stated, plaintiff was riding—the husband driving. They were on a pleasure drive with their friends and guests Mr. and Mrs. Herman Birkman as passengers. However, after they had started on their pleasure journey, plaintiff's husband suggested that they look at some Spruce trees he had seen advertised for sale at some point in or near Fredricktown, with the view of purchasing, and planting the trees on the "new home front" of a property jointly owned by plaintiff and her husband. As to the inspection of the Spruce trees—the husband testified " * * that was all my idea," but when he "told her (plaintiff) about it she was interested in seeing them too." Having inspected the trees, the party of four in the home-bound Roddy vehicle was going eastwardly, as stated. Mr. Birkman was seated in the front seat to the right of plaintiff's husband. Mrs. Birkman and plaintiff were seated in the rear seat—plaintiff on the right. " * * It had been drizzling rain just about all day, but when we started back home it had already quit raining and the sun had come out. * * * " A patrolman, witness for plaintiff, who arrived at the place of the collision approximately twenty-five minutes after the event, said the highway was dry.

The highway traveler moving eastwardly east of Fredricktown on Highway 72 can look down a gradual decline in the eleva-

tion of the highway and up a gradual upgrade and see the place where the collision occurred from and throughout a distance of over a thousand feet.

Defendant who had been preceding the Roddy vehicle in his Chevrolet had intended to turn into a private drive north of the highway, but, observing westbound traffic, stopped his vehicle in the eastbound lane. The Roddy vehicle struck the rear end of defendant's Chevrolet, and plaintiff was thrown forward from her position in the back seat of the Ford and against the back of the front seat and injured.

Plaintiff testified, "Well mostly we were just out for a drive on Sunday and as we were driving up this way my husband had seen a clipping in the Southeast Missouri paper about some Spruce trees for sale and he said, 'Well, let's just go by and see those trees while we're driving around up here.' And that's where we went. We went to see those Spruce trees. * * * Well, (going toward home) we were driving along just in the line of traffic and at this little side road it seemed to me all at once, but I guess he (defendant) must have slowed down just a little, all of a sudden he just stopped right in front of us, without a turning signal light or anything, we didn't see a light of any kind on his car."

Driving in the line of traffic and approaching the scene of the collision, both vehicles had been moving 45 to 50 miles per hour. Witnesses said the Ford had been following the Chevrolet at the distance of 100 to 150 feet. Sometimes in her testimony plaintiff changed her estimate—"100 to 150 feet" to "100 yards," but we infer that this was inadvertent. The vehicles had been proceeding at approximately the same speed and position in movement for a distance of "a quarter of a mile, probably farther." Plaintiff's husband testified, "We had followed him quite a ways. I was watching the car." The defendant had not changed speed "up until the time" the husband noticed defendant change speed. And when the husband noticed defendant change speed, defendant's car was "practically stopped." When he noticed defendant change speed, the husband applied the brakes of the Ford "and hollered." The Ford was moving 10 or 12 miles an hour at the time of the impact. It had made skid marks 66 feet in length.

Herman Birkman testified that he noticed defendant change speed when the defendant's vehicle was 100 feet from the point of collision. The Roddy vehicle was then probably 100 feet behind the Chevrolet. When the Chevrolet began to slow down, plaintiff's husband applied the brakes of the Ford and was "within 25 feet, something like that, before Mr. Francis came to a dead stop." When the Chevrolet was 25 feet from the point of collision it was moving at a speed of "probably 15 miles" per hour.

Defendant testified that he had turned the directional light on and began to slow down when he was three or four hundred feet from the private drive into which he had intended to make a left turn. He slowed down gradually, but stopped upon observing the approach of westbound traffic.

In contending that plaintiff's case should not have been submitted to the jury on the theory of primary negligence, defendant does not contend that no substantial evidence was introduced tending to show that he was guilty of primary negligence as submitted. Neither does defendant seriously argue that as a matter of law, plaintiff "personally" was guilty of contributory negligence. Defendant contends that plaintiff's husband, driver of the Roddy vehicle, was negligent as a matter of law in failing to look out and to have the vehicle under such control as to avoid a collision with defendant's car. The asserted negligence of the husband, says defendant, was imputable to plaintiff as a matter of law inasmuch as the Roddy vehicle, concededly, was jointly owned by plaintiff and her husband, and the plaintiff's evidence, says defendant, demonstrates that plaintiff and her husband were, at the time, engaged in a joint enterprise.

Initially we shall treat with the last-mentioned contention that negligence, if so, of plaintiff's husband was, as a matter of law, imputable to plaintiff.

■ It is true, as defendant asserts, that plaintiff's own evidence shows that the Ford, which the husband was driving and in which the plaintiff was riding, was jointly owned by them. The evidence, testimony of the plaintiff and her husband, further shows (as we have indicated supra) that they were on a Sunday-afternoon journey for their pleasure and for the pleasure of their guests the Birkmans; and that, while the journey was in progress they proceeded to inspect plantings with the view of purchase and use on their jointly-owned "new home front" property. We are of the opinion that those facts (conceded or established by plaintiff's own evidence) require the application of the principle of imputed negligence. Here, the husband and plaintiff wife were, as were the brothers in Tannehill v. Kansas City, C. & S. R. Co., 279 Mo. 158, 213 S.W. 818, the owners of their car jointly, they were on a journey "on either pleasure or business bent"—a joint enterprise—and neither had any more, or any less, control of the car at the time than the other. In such a case, it seems clear that the negligence of one part owner of the car is imputable to the other. Tannehill v. Kansas City, C. & S. R. Co., supra. See also Perrin v. Wells, Mo.App., 22 S.W. 2d 863, 865, in which case the husband who was driving and the plaintiff wife who was riding were the joint owners of the automobile, "did not have separate pocketbooks" and were on their way to the place of the wife's employment. It is noticed that a legally significant fact of joint ownership or interest in the vehicles driven by the husbands of the respective plaintiffs was absent in Silsby v. Hinchey, Mo.App., 107 S.W.2d 812, and in the more recent case of Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, but concededly present in the instant case.

Nevertheless, although the negligence of plaintiff's husband was imputable to plaintiff, the trial court did not err in submitting plaintiff's case to the jury on primary negligence of defendant unless plaintiff's husband as a matter of law was guilty of negligence proximately contributory or concurring with defendant's negligence in causing the casualty. In the Tannehill case it was said that the ruling of the learned court nisi in sustaining the demurrer to the evidence was well taken. But in that case, of course, not only was the negligence of the brother, driver of the Tannehill vehicle, held to have been imputable to plaintiff's decedent as a matter of law, but the brother, driver of the vehicle, also was held to have been negligent as a matter of law.

So it is that, in ruling defendant's contention that the trial court erred in submitting plaintiff's case on the primary negligence theory, the question is—was plaintiff's husband as a matter of law guilty of negligence proximately contributing or concurring with negligence of defendant in causing the casualty.

■ It is the common-law duty of every motorist to keep a lookout ahead and laterally for other vehicles upon the highways to avoid injury to others and he must be held to have seen what looking would have revealed. " * * * It is also the common law duty of a motorist in the rear of another vehicle to operate his vehicle in such a position and to have it under such control as to be able to stop or take other appropriate measure to prevent running into the car ahead of it if the latter comes to a sudden slowing or stop; and failure of the operator of the vehicle in the rear to exercise the highest degree of care in those respects is negligence. * * * " Gooch v. Avsco, Inc., Mo., 337 S.W.2d 245, 249, and cases therein cited.

■■ It is implicit in the very language of this statement of common-law duty, which statement we have quoted from the Gooch-Avsco case, that a motorist in the rear is not negligent as a matter of law in any and all circumstances merely because he has so managed his motor vehicle with

respect to position and control that he is unable to stop or take other appropriate measure to prevent running into the vehicle ahead upon its sudden slowing or stopping; but the statement does definitely convey the meaning that the motorist in rear must exercise the highest degree of care in those stated respects and that his failure to exercise the highest degree of care in such respects is negligence. Consequently, in our case, in examining the contention that plaintiff's husband was guilty of negligence proximately concurring with alleged negligence of defendant, we shall examine the evidence of the husband's conduct in the circumstances of our case. And in determining the contention we shall not forget that contributory negligence (in our case, contributory negligence in the sense that the husband's negligence is imputable to plaintiff) is usually a jury question, and always is unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, that the only reasonable conclusion is that plaintiff was proximately negligent. Lemken v. Brooks Truck Lines, Inc., Mo., 322 S.W.2d 803.

■ Plaintiff's own testimony does not compel the inference or conclusion that her husband was not carefully observing the defendant's vehicle and its movement. The husband testified that he was watching defendant's car. And he testified in effect that, when defendant began to modify the speed of his vehicle, the husband noticed the fact, and applied the brakes of the Ford, skidding that vehicle 66 feet. The husband had been driving in the line of traffic at the speed of 45–50 miles per hour and 100–150 feet behind defendant's vehicle, which had been moving at approximately the same speed for a quarter of a mile or more. We think it should not be said that, as a matter of law, the driver of the Roddy car was guilty of negligence in driving too closely or in failing to look out or have the car under appropriate control merely because that car collided with defendant's vehicle. We think one could reasonably say that, in the circumstances of this case, plaintiff's husband, in the exercise of the highest degree of care, was not obliged to anticipate and meticulously guard against the remote possibility that defendant, who had been driving his vehicle more or less steadily at the stated speed, would, in violation of statute (Section 304.019 RSMo 1959, V.A. M.S.), suddenly decrease speed and stop his vehicle on the pavement directly in the line of east-bound traffic, particularly without giving a timely and appropriate signal. We think the issue of negligence of plaintiff's husband was for the jury.

Although the trial court did not err in submitting plaintiff's case to the jury on the theory of primary negligence, we are of the opinion that the evidence supporting plaintiff's primary-negligence theory does not support but actually negatives plaintiff's theory of defendant's negligence under the humanitarian rule. Realistically, it was the fact, supported by plaintiff's evidence in justifying the submission of the theory of defendant's primary negligence, that defendant stopped his car suddenly, which conduct, at least in part, brought about plaintiff's injury. Had defendant merely continued the movement of his vehicle at retarded speed and without stopping, there could have been but a possibility of injury to plaintiff. Only when defendant stopped his vehicle, could plaintiff be said to have been in imminent peril. But after defendant stopped his vehicle the collision and plaintiff's injury almost immediately ensued. We here remind ourselves of plaintiff's evidence tending to show that plaintiff's husband applied the brakes of the Roddy vehicle upon seeing the initial slackening or modification of the speed of defendant's car, and in spite of this the Roddy car struck the rear of the Chevrolet, but only when and almost immediately after it was brought to a stop. Now, we shall assume that, after he stopped his vehicle, defendant had notice that plaintiff was in imminent peril because of the then close proximity (and rate of speed) of the movement of the Roddy car to the defendant's

vehicle—even so, the transcript of the record does not disclose substantial evidence tending to show that defendant, in the exercise of the highest degree of care, could have caused his vehicle to again speed up in a forward movement or speed up and turn off onto the south shoulder of the highway in time to have avoided the casualty.

■ Plaintiff, in making out a case against defendant on the theory of his negligence under the humanitarian rule, had the burden of introducing substantial evidence tending to show that, after defendant had notice that plaintiff was in a position of peril, defendant had the present ability with the means at hand to have averted the impending injury without injury to himself or others. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482. In the state of the record, the submission of plaintiff's case on the theory of humanitarian-rule negligence was error. Mc-Clanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704; Id., Mo.App., 242 S.W.2d 265. And, since the trial court submitted plaintiff's case on primary negligence and negligence under the humanitarian-rule in separate or disjunctive instructions, the judgment for plaintiff should not stand.

■ Since the cause is to be remanded, it is not necessary to review contentions of error in instructing the jury. However, in submitting plaintiff's case on the theory of primary negligence, care should be taken in so drafting the instructions that they are not subject to the possible criticism of assuming controverted supporting facts. And we should keep in mind that the phrase "highest degree of care" used in the statute (Section 304.010 RSMo 1959, V.A.M.S.) defining the duty of persons operating motor vehicles upon the public highways in this state, means that degree of care that a very careful and prudent person would ordinarily exercise under the same or similar circumstances. Martin v. Turner, Mo., 306 S.W.2d 473.

The judgment should be reversed and the cause remanded. It is so ordered.

PER CURIAM.

The foregoing opinion by PAUL VAN OSDOL, Special Commissioner, is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.