Leroy **RUEDIGER**, Appellant,

v.

**AMERICAN BUS LINES, INC.**, Respondent.

No. 52755.

Supreme Court of Missouri,

En Banc.

Nov. 13, 1967.

Rehearing Denied April 8, 1968.

Gray & Sommers, Charles E. Gray, St. Louis, for appellant.

Strubinger, Wion and Burke, J. Lloyd Wion, St. Louis, for respondent.

HENLEY, Presiding Judge.

Action for damages for personal injuries arising out of a collision involving a tractor-trailer driven by plaintiff and a Trailways bus owned by defendant, American Bus Lines, Inc., and driven by defendant Vincil Lee Wood. Verdict and judgment for $128,000 were for plaintiff against defendant American Bus, and in favor of defendant Wood, operator of the bus. The trial court sustained American Bus' motion for judgment in accordance with its motion for directed verdict, set aside the judgment and entered judgment for that defendant and, in the alternative, sustained said defendant's motion for new trial. Plaintiff appeals from this judgment and order.

Both motor vehicles were traveling west on Interstate-70, a four-lane highway with two twelve-foot lanes for westbound traffic separated by a median strip from two lanes for eastbound traffic. The collision occurred February 10, 1965, at about 2:00 A.M., approximately one mile west of O'Fallon in St. Charles county when, according to plaintiff, the bus suddenly slowed or stopped, without warning, in its right hand lane as the tractor-trailer was attempting to pass. The right front of the tractor struck the left rear of the bus, causing the tractor to catch fire. According to plaintiff the bus was caused to slow or stop by application of its parking brake through the loss of pressure from an air

reservoir tank controlling the parking brake system; he further asserts that a warning device on the bus' dashboard and stop signal lights on the rear of the bus designed to activate automatically on application of the parking brake failed to function. Plaintiff submitted on the theory that defendant was negligent in failing to maintain the parking brake system in operative condition. As a result of the collision plaintiff was rendered unconscious; when he came to, he was on fire in his tractor.

The court set aside plaintiff's judgment and entered judgment for defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law; it sustained defendant's alternative motion for new trial on the ground it had erred in giving instruction No. 3, plaintiff's verdict-directing instruction, " * * * because there was no evidence to support the giving of such instruction."

At the time of the collision visibility was good; the pavement was dry, but the shoulders were muddy. Plaintiff testified that he was en route to his home at Hermann, Missouri, on a return trip from the Stockyards at East St. Louis, Illinois, where he had delivered a load of cattle. Somewhere near St. Peters, Missouri, he started traveling behind this westbound Trailways bus in the outside or north lane of the twenty-four foot pavement. The two vehicles traveled in this position at a speed of 50–55 miles per hour for about ten miles, plaintiff maintaining a distance of 300 to 400 feet between the bus and his tractor-trailer. Deciding to pass the bus, he increased his speed to close the distance before turning out to his left into the passing lane. When he reached a point approximately 50 feet from the rear of the bus, as he prepared to " * * * swing around, to go around it * * *," he realized for the first time that the bus was stopped or stopping; he "thought" it was stopped; he "swerved out" to the left and applied his brakes, his drivewheels (according to the testimony of a state highway pa-

trolman) laying down approximately 60 feet of skid marks beginning in the north lane with the left skid mark crossing the center line into the south lane before impact.

Plaintiff further testified that while traveling behind the bus he had his lights on dim, the light projecting forward approximately 200 feet; that there were no vehicles between him and the bus, and the passing lane ahead was clear and open; shown a picture of the rear of the bus, he counted fifteen taillights, but said that he did not know whether all were on as he followed the bus; that he could tell the difference between taillights and "stop" lights; that he saw no stoplights " * * * come on on the bus * * *" before impact, and the bus gave no signal that it was stopping; that his tractor-trailer, including its brakes and tires, was in good condition; that under existing conditions the tractor-trailer traveling 50–55 mph could be stopped in about 100 feet; that as he " * * * came up behind the bus * * *" he did not blow his horn, flash his lights, activate his left turn signal, or give any signal that he intended to pass, the vehicles behind him being far enough back they would not be involved in his passing maneuver.

Plaintiff read into evidence certain Interstate Commerce Commission regulations (Title 49–Transportation, Code of Federal Regulations) applicable to installation, operation and maintenance of the braking system on the bus. Those regulations, insofar as pertinent here, are substantially as follows: Section 193.41 provides that every singly driven motor vehicle shall at all times be equipped with parking brakes. Section 193.45 requires that brake tubing and hoses shall be designed and constructed of proper material and so installed as to insure proper continued functioning. Section 193.46 requires that all connections for air and vacuum braking systems shall be adequate in material and construction to insure proper continued functioning; be designed, constructed and installed so as to

insure, when properly connected, an attachment free of leaks, etc. Section 193.48 requires that all brakes shall be operative at all times, except in certain instances not applicable here. Section 193.50 requires that every bus equipped as required with air or vacuum reservoirs shall have such reservoirs so safeguarded by a check valve or equivalent device that in the event of a failure or leakage in its connection to the source of compressed air or vacuum, the air or vacuum supply in the reservoir shall not be depleted by the leak or failure. Section 193.51 requires that every bus using compressed air for the operation of its brakes be equipped with a warning signal audible or visible to the driver giving continuous warning at all pressures below a fixed pressure not less than one-half the compressor governor or cut-out pressure; in addition, this section requires that the bus be equipped with a pressure gauge indicating to the driver the pressure available for braking, and requires that the warning device and gauge be maintained in operative condition.

This bus was equipped with two braking systems, both controlled by compressed air from the same reservoir: one, the regular service brake system; and the other, a parking brake system, sometimes referred to as the emergency or safety brake. It was also equipped with (1) a warning device, and a gauge which related the air pressure in the brake system, both on the dashboard; and (2) stoplights on the rear connected with the parking brake system so that when the parking brake was fully applied these lights would be turned on automatically, if properly functioning. The parking brake is applied by the force of an expanding or relaxing spring on brake shoes which, in turn, apply pressure on the brake drums of one axle. This spring is, normally, when the vehicle is in motion, held in a compressed position by the force of air from the air reservoir; that is, it works on a lack of air pressure, whereas the regular service brake works only if pressure is available. In other words, the two systems are so related that when the air pressure goes down to the point where there is not sufficient pressure for application of the service brake, the parking or safety brake is automatically applied, so that the vehicle is never without brakes. The intended or regular application and release of the parking brake is controlled by a valve or switch on the dashboard. The normal operating pressure in the air system is 90 to 115 pounds; when the air pressure drops to 50–60 pounds the parking brake shoe begins to make contact with, but exerts no pressure on, the drum and the warning device on the dashboard is activated, if functioning properly; when the pressure drops to 35–40 pounds there is a full application of the parking brake and the stoplights are then turned on automatically, if functioning properly.

Harold L. Dobrikin, vice-president in charge of engineering of the company which manufactured the parking brake used on the bus, testified, in part, that the force applied on the parking brake " * * * just prior to its full application is hardly enough to affect the movement of the vehicle, especially if it is in gear and the engine is running * * *;" that it is hardly perceptible; that the bus operator would first notice the movement being affected when the parking brake is fully applied, "When it suddenly hits the trigger point and then get[s] the full force of the spring." He further testified that the minimum distance in which the bus could be stopped by application of the parking brake while traveling at 55 mph was 375 feet and that the automatic stoplights would be on for that minimum distance; that the gradual application of the parking brake would make the stopping distance "Very slightly greater * * *," because until this brake is fully applied it " * * * would do very little toward decelerating the vehicle * *."

Joseph B. Kelems, a member of the state highway patrol, testified, in part, that Vincil Wood, operator of the bus, told him: "These buses are equipped with a parking

brake. It cut on and the truck didn't see me slowing in time and it hit the rear end."

Vincil Wood testified that he left the St. Louis Terminal driving this bus at approximately 1:00 A.M., February 10; that before leaving he checked the lights and brakes and all were functioning properly; that his first stop was St. Charles; that he used the brakes several times between St. Louis and St. Charles and they functioned properly; that plaintiff's tractor-trailer followed him from near St. Charles for approximately ten miles; that shortly before the collision "There was an emergency parking brake failure come on on the bus * * *," causing the bus to stop; that he "felt" a "drag" on his brakes and the bus began to slow; that as the bus was "* * * coming to a halt * * *," while still moving but within 30–40 feet of where it came to a complete stop, he looked at the gauge for the first time and the air pressure was down; that the bus traveled approximately 650 feet from the time he "felt a drag" until it stopped; that the bus was stopped on the highway a few seconds before the collision; that the warning devices (a red light and a buzzer) on the dashboard did not come on when the air pressure dropped and the parking brakes "kicked on," although they are designed to activate when the pressure drops to warn of trouble in time for the driver to move the bus off the traveled portion of the highway; that his brake lights also "should have come on;" that when he "felt" the parking brakes "kick in" he glanced in his mirror and saw the truck about a quarter to a half mile behind him, but he did not turn on any lights although the rules required that he turn on both right and left turn signals; when the bus came to a complete stop he reached forward and pushed a button to release the parking brake, put his bus in first gear and tried to get the brake loose and the bus moving, but the collision occurred before he could do so; that he looked in his mirror again when the bus came to a complete stop on the highway and by that time " * * * his [the trac-tor's] light went in behind my bus, I couldn't see him in my rear view mirror again (indicating) ; so he tried to swerve * * *;" that the tractor-trailer was then about 50 feet behind him.

Defendant asserts in Point II of its brief that not only was the trial court correct in holding that there was no evidence to support the giving of plaintiff's verdict-directing instruction, but that the court should have further held that plaintiff wholly failed to make a submissible case. Defendant contends that plaintiff did not make a submissible case, because he did not show: (1) that defendant was negligent in failing " * * * to keep the parking brake system * * * in operative condition * * *;" and, (2) that such alleged negligence was the proximate cause of the collision. Defendant further contends that to make a submissible case of negligence plaintiff was required to prove not only the existence of a defective condition in the parking brake system, but, also, that defendant had knowledge, actual or constructive, of the defective condition.

Defendant argues that there was no proof of a defective condition in the parking brake system. It argues that the bus was equipped with parking brakes, and warning signals on the dashboard, as required by Interstate Commerce Commission regulations; that those brakes did operate as they were designed and intended to function by ICC regulations. It is true that this brake was designed to function when the air pressure drops, as it did, so that the vehicle would not be left helpless, without brakes, as a moving, menacing juggernaut unsafe for its passengers and other traffic on the highway. But, that is not to say that the air pressure controlling the brake may be permitted to drop to the point where it will cause the bus, while traveling the highway, to stop and thus create a hazardous, hulking obstacle in the path of other vehicles on the highway. The ICC regulations to which both plaintiff and defendant refer and accept as having the force and effect

of law,[1] require also that the braking system be so designed as " * * * to insure proper continued functioning, * * * free of leaks, * * * " so that " * * * the air supply shall not be depleted * * *." The parking brake system is functioning properly while the bus is being driven on the highway when the air pressure is sufficient to keep the brake spring compressed; it is not functioning properly when the air supply is depleted.

Admittedly, there was " * * * a parking brake failure * * *," a "failure" in that the compressed air supply in the reservoir became so depleted that it caused the brake to apply when not intended. The bus driver so testified; he also testified that the device on the dashboard, required and designed to warn him of that condition in time to take precautionary measures, did not function. Plaintiff testified that the bus stopped on the traveled portion of the highway without warning; that the stoplights, designed as a part of the system to operate automatically on application of this brake, did not come on.

The evidence was sufficient to show a defective condition in the parking brake system, a defect in that part of the system supplying air to the brake, in violation of 49 CFR, §§ 193.46 and 193.50.

Plaintiff contends that the failure of defendant to comply with the ICC regulations constituted negligence per se; defendant does not specifically deny this contention. It contends that it is liable, as owner of the bus, for injuries caused by defective brakes only if it was negligent in failing to discover and remedy the defect; that the burden was on plaintiff to prove it had knowledge of the defect in time to make necessary repairs. It cites in support of this contention the cases in footnote 2. The

cases are distinguishable. In fact, the court, speaking through Judge Bennick, said in the *Monsour* case, 115 S.W.2d at l. c. 223: " 'Knowledge of the defect * * * is not a necessary element of negligence where the act or omission, in and of itself, involves a violation of a duty, as in case of violation of a statute or ordinance, in jurisdictions [such as our own] where this is regarded as negligence per se, where there is an absolute duty on the owner * * * of property to keep it in a safe condition * * *.' "

The plaintiff having proved violation of the regulations, it devolved upon defendant to prove legal excuse or avoidance of its failure to observe the duty imposed by the regulations. Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625, 630 [5–8]; Bowman v. Ryan, Mo.App., 343 S.W.2d 613, 622 [21]; Sams v. Adams Transfer & Storage Co., Mo., 234 S.W.2d 593, 594 [1]. The extent of defendant's effort to prove excuse or avoidance was to show by its driver that before he left the Terminal he inspected the brakes and lights and found them functioning properly, and that he used the brakes many times later and they functioned properly. This evidence, at best, presented a question for determination by the jury.

We hold that plaintiff made a submissible case of negligence; in so holding, we necessarily rule too that plaintiff's verdict-directing instruction was supported by evidence. The question of causal connection between the negligence charged and plaintiff's injury was also for determination by the jury.

In connection with its contention that plaintiff failed to make a submissible case, defendant briefs another point: that granting a new trial on the ground that

1. Interstate Motor Lines, Inc. v. Great Western Ry. Co., 10 Cir., 161 F.2d 968, 970[3]; Kane v. Branch Motor Express Co., 2 Cir., 290 F.2d 503, 505; Fairport, P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 828–829[3], 78 L.Ed. 1446.

2. Lowes v. Union Electric Co., Mo.App., 405 S.W.2d 506, 512; Monsour v. Excelsior Tobacco Co., Mo.App., 115 S.W.2d 219, 222[3]; Vogelgesang v. Waelder, Mo. App., 238 S.W.2d 849, 855.

there was no evidence to support the giving of plaintiff's verdict-directing instruction was the equivalent of granting a new trial on the discretionary ground that the verdict was against the weight of the evidence.

There is no merit in this point. Defendant's motion for new trial alleged, in ground No. 3, that the verdict was against the weight of the evidence. The court sustained the motion on ground No. 12, error in giving instruction No. 3, and thus, in effect, overruled it on all other grounds. State ex rel. Sturm, et al. v. Allison, Mo., 384 S.W.2d 544, 547 [3]. The court did not specify discretionary grounds for its order and we may not presume the new trial was granted on such grounds. Civil Rule 83.06 (c), V.A.M.R.

■ Plaintiff contends that the court erred in setting aside his judgment on the ground he was guilty of contributory negligence as a matter of law; that under the evidence and the law the issue of his negligence was clearly one for the jury. Contributory negligence of a plaintiff " * * * is usually a jury question, and always is unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, that the only reasonable conclusion is that plaintiff was proximately negligent." Roddy v. Francis, Mo.App., 349 S.W.2d 488, 492 [4]; Lemken v. Brooks Truck Lines, Inc., Mo., 322 S.W.2d 803. Stated in other words, in order to hold plaintiff contributorily negligent the conclusion must be reached " * * * that reasonable minds could not differ as to plaintiff's negligence; otherwise the question of plaintiff's contributory negligence was for the jury." Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807, 812.

■ Defendant contends that plaintiff was contributorily negligent in that he failed to maintain a proper lookout; that he should have but failed to see the well-lighted bus slowly stopping within the 650 feet it took to come to a complete stop before he got to a point within 50 feet of the bus and within time to stop or pass without collision.

We hold that under this evidence reasonable minds could differ as to plaintiff's negligence; that this issue was solely for the jury; and, that the court erred in ruling plaintiff was negligent as a matter of law.

■ These two vehicles had been traveling one behind the other in the same lane at the same steady speed for approximately ten miles maintaining a distance interval between them of 300–400 feet. Immediately before the collision, the bus decreased its speed and stopped in that lane as the tractor-trailer maneuvered to pass by increasing its speed to shorten the distance between the two before moving into the passing lane. Of course, in these circumstances, the interval between them closed in less time and space than it would had the bus maintained its same speed. " * * * it is, * * *, a matter of common knowledge that a *gradual* slowing of speed without signal might, under some circumstances, be more difficult to discern by the following driver than a sudden stop, and a jury reasonably might believe that the following driver would not become conscious of such slackening of speed by the forward vehicle until the distance between the two had lessened considerably." Lafferty v. Wattle, Mo.App., 349 S.W.2d 519, l. c. 526. With the forward vehicle decreasing and the following vehicle increasing speed at the same time a jury reasonably might believe, under the facts in this case, that the following driver would not, in the exercise of the highest degree of care, see and realize that the forward vehicle was stopping until it was too late to avoid a rear-end collision.

■ It may not be said as a matter of law that plaintiff was guilty of negligence in failing to keep a lookout, or in driving too closely behind the bus before moving into the passing lane, merely be-

cause the tractor-trailer collided with the bus. It reasonably could be said that plaintiff, in the exercise of the highest degree of care, was not required to anticipate and meticulously guard against the possibility that the bus, which had been traveling steadily at the same speed, would, without signal, in violation of § 304.019, RSMo 1959, V.A.M.S., decrease its speed and stop directly in plaintiff's path on a limited access highway in open country, a mile beyond the nearest town, where, as a matter of common knowledge, regular stopping places for passenger buses do not exist. Roddy v. Francis, supra; Young v. Anthony, Mo., 248 S.W.2d 864, 867 [2]; Woods v. Chinn, Mo.App., 224 S.W.2d 583, 586 [2]. We have read the authorities cited by defendant; they are not applicable.

The issue of negligence vel non of plaintiff was for the jury.

The judgment and order are reversed and the cause is remanded with directions to reinstate the judgment for plaintiff.

HOLMAN, C. J., HENLEY, FINCH, EAGER and DONNELLY, JJ., concur.

STORCKMAN, J., dissents in separate dissenting opinion filed.

Dissenting Opinion

STORCKMAN, Judge.

I respectfully dissent on the ground that the plaintiff is guilty of contributory negligence as a matter of law in that the plaintiff testified that he speeded up without going into the passing lane and failed to discover that the defendant's bus had slowed down or stopped until it was too late to avoid striking the bus. The plaintiff's testimony establishes he did not exercise the highest degree of care for his own safety in the operation of his motor vehicle while undertaking to pass the defendant's bus. Section 304.016, RSMo 1959, especially subdivision 1(2).

SEILER, J., dissents and concurs in dissenting opinion of Storckman, J.