**Ruby STOVER and Lewis Francis Stover, Plaintiffs-Respondents,**

v.

**Mrs. Clyde PATRICK, Defendant-Appellant.**

No. 54147.

Supreme Court of Missouri, En Banc.

Nov. 9, 1970.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Schroff, Springfield, for plaintiffs-respondents.

Farrington, Curtis & Strong, E. C. Curtis, Thomas Strong, Springfield, for defendant-appellant.

FINCH, Judge.

Plaintiffs (husband and wife) brought suit in separate counts to recover for personal injuries arising from a collision between the Stover automobile and a car driven by defendant. Mrs. Stover sought $75,000 and Mr. Stover asked for $15,000 to cover his injuries plus loss of consortium and expenses caused by injuries to his wife. After the jury returned a verdict for defendant on both counts, the trial court sustained plaintiffs' motion for new trial on the basis that certain instructions given at defendant's request were erroneous. Defendant has appealed from that order. We affirm the order for a new trial for Ruby Stover but reverse and remand with directions as to the claim of Lewis Francis Stover.

The issues presented on appeal do not require an extended recital of the evidence and we set out only so much as is necessary to an understanding of our decision.

The collision occurred in midafternoon on Highway 60 at a point which at that time was a paved two-lane highway. The Stovers, with Mr. Stover driving, were going west enroute to Springfield to "stand up" at a wedding and then spend the night with the friends who were being married. Mrs. Patrick was traveling east enroute to her home in Rogersville.

There had been a very heavy snowstorm the night before and, according to evidence offered by the defendant, the highway at that point was covered with ice and snow and was very slick. However, the Stovers testified that at that point the highway had been cleared and was not slick. They stated that there was only loose, blowing snow on the highway and at times the center line could be seen. The Stovers fixed their speed at 20 to 30 miles per hour, and Mrs. Patrick fixed her speed at 20 to 25 miles per hour.

According to the Stover evidence, they came over a rise and started down into a dip in the highway, at which time they observed cars approaching from the opposite direction come over another rise in the highway and start down into the dip. The Patrick car was described as the second of the automobiles, traveling about a car's length behind the first automobile. When plaintiffs and defendant were about 700 feet apart, the Patrick car pulled out as though to pass, getting out far enough for plaintiffs to see the left headlight. It then pulled back in behind car No. 1. When the Patrick car was 200 to 300 feet away, it pulled out a second time. About the same amount of the front of the automobile could be seen as before. Again, it went back into its own lane of travel, but this time it was observed to go to the right onto the lip on the concrete pavement and perhaps the shoulder, after which, according to plaintiffs, it whipped back to its left and across the highway in front of the Stover automobile. The Stovers testified that they observed the wheels of the Patrick automobile turning and that it was not skidding on any of these occasions.

Mr. Stover testified that when the Patrick car came out the third time, he put his car in low gear, shut the engine off, started to apply his brakes, and to turn to the right. He did not fix the distance between the cars when this occurred other than to say that it was the distance between the witness stand and some wall in the room, but that distance was not more specifically stated. The collision occurred in the westbound lane of the pavement (possibly partially on the north shoulder), the front end of the Stover car colliding with the right side of the Patrick automobile.

The evidence on behalf of Mrs. Patrick was that as she came over the rise and

started down into the lower area of the highway, there was no car in front of her, and that she did not pull out to pass another automobile. She stated that her car began to slide gradually to the opposite side of the road without any act on her part, such as turning the wheels or accelerating or applying the brakes. She testified that when her car began to skid, she tried cutting her wheels against the skid and then tried to steer back to her own side of the road. When the car wouldn't respond, she tried to steer it into the ditch on her left-hand side in order to try to avoid colliding with the plaintiffs' oncoming car, but the two cars collided.

Both plaintiffs submitted solely on the basis that defendant drove on the wrong side of the road. Instruction No. 4, tendered by Ruby Stover, was as follows:

"Your verdict must be for plaintiff, Ruby Stover, on Count I of the petition if you believe:

"First, defendant drove on the wrong side of the road, and

"Second, defendant was thereby negligent, and

"Third, as a direct result of such negligence the plaintiff, Ruby Stover, sustained damage."

Instruction No. 6, given on behalf of Mr. Stover, was similar.

Defendant offered and the court gave Instruction No. 8, as follows:

"Your verdict must be for defendant on plaintiffs' claims for damages if you believe that defendant's motor vehicle skidded from its proper lane of travel onto the wrong side of the road."

In sustaining plaintiffs' motion for new trial, the first reason given by the trial court was that Instruction No. 8 was improperly given because it "did not hypothesize the finding that the skid of de-

fendant's automobile was not negligent." We conclude, for the reasons which follow, that the giving of said instruction was reversible error.

Defendant seeks to justify Instruction No. 8 as a proper converse of Instructions 4 and 6 given by plaintiffs. No contention is made that No. 8 is a true converse, and obviously it is not. Rather, it is defendant's contention that it was a permissible affirmative converse under the Third Method of conversing provided in MAI 33.01, Second Edition.[1]

MAI does permit affirmative converse instructions. Such an instruction was approved in Wilson v. Checker Cab Co., Mo. 431 S.W.2d 122. There plaintiff's verdict directing instruction sought recovery on the basis that a taxicab driver "either: allowed the taxicab to move forward while plaintiff was alighting, or failed to provide plaintiff with a reasonably safe place to alight from the taxicab." Defendant submitted an affirmative converse instruction as follows: "Your verdict must be for the defendant if you believe plaintiff fell after she had alighted from defendant's taxicab and traveled approximately twenty feet from said taxicab." Plaintiff argued that said instruction was erroneous because it did not precisely converse any element of plaintiff's verdict directing instruction, and was not in substantially the same language as the verdict directing instruction. This court held that in a proper affirmative converse it is not necessary to precisely converse plaintiff's theory. In approving the converse instruction given, this court said, 431 S.W.2d 1. c. 123: "In Instruction 6 the defendant hypothesized the ultimate issue of whether plaintiff had alighted from the taxicab and traveled approximately twenty feet before she fell. The testimony of the police officer constituted independent evidence to support this submission. If the jury found the submitted issue to be true it defeated plaintiff's submitted claim. If plaintiff fell after she

---

1. Same as MAI 29.01, First Edition.

had alighted from the taxicab and had traveled twenty feet, the direct cause of her damage could not have been that the the taxicab moved 'while she was alighting,' or that the taxi driver failed to provide her with 'a reasonably safe place to alight.' "

Is Instruction No. 8 a proper affirmative converse instruction under MAI 33.01 and under the principles announced in Wilson v. Checker Cab Co., supra? We hold not. Even if we should hold that a defendant may give an affirmative converse based on the theory that her car skidded from her proper lane onto the wrong side of the road, Instruction No. 8 would be erroneous because it does not limit its application to non-negligent skidding. Instead, it told the jury that *any* skidding, regardless of how caused, would constitute a defense.[2] There is a line of cases in this state which have held that *mere* skidding is not negligence and does not give rise to an inference of negligence,[3] but those cases would not justify Instruction No. 8 as given. Accordingly, we hold that Instruction No. 8 was prejudicially erroneous.

The more difficult question is whether Instruction No. 8, modified to hypothesize and submit the issue of whether the skidding was negligent, would be a proper affirmative converse instruction. Since this case must be retried, we have concluded that it is incumbent upon us to consider and decide that question.

In the Checker Cab case the affirmative converse told the jury, in effect, that even though the taxicab driver moved the cab while plaintiff was alighting, and even though he did not provide her with a safe place to alight, still if, after alighting, plaintiff walked twenty feet before falling, she could not recover. It submitted an additional fact which, if found, defeated recovery. That is not comparable to an instruction submitting only the question of whether movement of defendant's car into the wrong lane was the result of non-negligent skidding (which is what a modified Instruction No. 8 would do). It merely converses, but in different language, the very same issue submitted in the verdict directing instruction of whether the driving of the automobile into the wrong lane was negligent. Under MAI 33.01, this can be done only by a true converse instruction. Hence, to meet the issue presented by Instructions 4 and 6, the proper course would be to submit a true or exact converse under MAI 33.02. Under such an instruction, defendant would be permitted to argue (similar to what can be done in sole cause situations) that she did not negligently drive onto the wrong side of the road as submitted by plaintiffs' instructions but, instead, got there as a result of a non-negligent skid, and consequently that the verdict should be for defendant under that converse instruction.

■ "Mere skidding" instructions are not prohibited by specific language in

2. It was so argued to the jury by counsel for defendant when he stated: "But then you come around to one little instruction, and please remember No. 8, No. 8, a little four-line instruction. After all that other is out of the way, it simply says in the commonest words: if the car being driven by Mrs. Patrick skidded across the center line, then your verdict under the law of the state of Missouri applied to this case must be for Mrs. Patrick, if her car skidded. Just read that No. 8, a little four-line instruction. Now that is the law.

"Now let's examine the evidence in this case under that law which binds all of us. These people, of course, want you to believe that there was no skidding out

there that day because they know they cannot recover if there is skidding, if the car skidded, so the first thing they try to convince you of is that the road was free of any substance on top of it, ice or snow, with the exception of a little loose snow blowing back and forth."

3. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59; Annin v. Jackson, 340 Mo. 331, 100 S.W. 2d 872; Evans v. Colombo, Mo., 319 S.W. 2d 549. Caveat: In connection with this line of cases attention is called to Friederich v. Chamberlain, No. 54622, decided by Division Two on March 9, 1970, and transferred on the court's own motion to the Court en Banc, where it is now pending on the September 1970 docket.

MAI, as are unavoidable accident instructions (MAI 1.01) and sole cause instructions (MAI 1.03). However, they are similar in nature to such instructions. In any event, they are not authorized under any of the three methods of converse specifically set out in MAI 33.01. They are not permissible and should not be used.

Ordinarily, the conclusion that the giving of Instruction No. 8 was error would dispose of this appeal and we would affirm the action of the trial court in granting both plaintiffs a new trial on their respective counts for personal injuries. However, defendant urges that the jury's verdict on defendant's counterclaim is res judicata on the issue of negligence of Lewis Stover in the operation of plaintiffs' automobile and that as a result plaintiffs should not have a new trial.

The verdict returned by the jury on defendant's counterclaim was as follows: "We, the jury, find the issues in favor of the defendant on her counterclaim against the plaintiff Lewis Francis Stover and assess defendant's damages at none." Actually, that form of verdict had been included in Instruction No. 17, given by the court at plaintiffs' request, which set out forms of verdict for use in deciding the two counts of plaintiffs' petition and defendant's counterclaim. With reference to possible verdicts on the counterclaim, Instruction No. 17 had informed the jury as follows:

"If all of you agree upon a verdict for defendant on her counterclaim against the plaintiff Lewis Francis Stover, it may be in the following form:

"'We, the jury, find the issues in favor of the defendant on her counterclaim against the plaintiff Lewis Francis Stover and assess defendant's damages at $_____ (here insert the amount or if none write the word "none").
_____Foreman.'

"If all of you agree upon a verdict in favor of the plaintiff Lewis Francis Stover and against the defendant upon the defendant's counterclaim, it may be in the following form:

"'We, the jury, find the issues in favor of the plaintiff Lewis Francis Stover and against the defendant upon the defendant's counterclaim.
_____Foreman.'"

■ We do not understand why plaintiffs chose to provide that particular form of verdict if the jury found for defendant on her counterclaim as that is not the form prescribed in the MAI 36.00 series (then MAI 32.00) for a verdict for defendant on the counterclaim, but in any event that was the form which was given at plaintiffs' request. When the verdict was returned, no objection thereto was made and no attack was made by a motion for new trial. No appeal involving the counterclaim was taken. Under those circumstances, plaintiffs have waived any right to attack the verdict. Bunch v. Crader, Mo.App., 369 S. W.2d 768; Cobb v. Cosby, Mo.App., 416 S.W.2d 222. See also Hewitt v. Chicago, Burlington & Quincy R. Co., Mo., 426 S. W.2d 27. Accordingly, the verdict on the counterclaim and judgment entered for defendant thereon must stand.

■ Necessarily, the jury, in reaching its verdict on the counterclaim, decided that Lewis Stover was negligent and that his negligence contributed to cause the collision; hence that verdict is res judicata of that issue. Reis v. La Presto, Mo., 324 S. W.2d 648; Shay v. New York Life Ins. Co., 354 Mo. 920, 192 S.W.2d 421; In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662. Under these circumstances, he may not now recover from defendant on the theory that he was not contributorily negligent. Therefore, the giving of Instruction No. 8, insofar as plaintiff Lewis Stover was concerned, was harmless error and he should not be granted a new trial therefor.

Finally, says defendant, plaintiff Ruby Stover also cannot recover because the negligence of Lewis Stover is imputed to her. This contention is made on the basis

that title to the automobile in which they were riding to visit friends and to "stand up" at their wedding was in their joint names. Cases relied upon as so holding are Roddy v. Francis, Mo.App., 349 S.W. 2d 488, and Perrin v. Wells, Mo.App., 22 S.W.2d 863, both decided by the St. Louis Court of Appeals, and a recent decision of Division I of this court, Hamilton v. Slover, Mo., 440 S.W.2d 947. If the position asserted by defendant is sound, that would cause the verdict and judgment on defendant's counterclaim against Lewis Stover to be also res judicata against Mrs. Stover, thereby defeating her right of recovery from defendant.

An examination of the three cases cited above discloses that although reference is made to the existence of a joint enterprise for pleasure, actually joint ownership was the primary basis upon which the court concluded that the negligence of the driver-spouse should be imputed to the passenger-spouse. This is particularly true of Roddy v. Francis and Hamilton v. Slover. In the latter case, Mr. and Mrs. Hamilton went in their jointly owned car to visit and aid her parents, Mr. and Mrs. Farmer. While there, they went to a grocery store to buy supplies for the Farmers. Mr. Hamilton drove and Mr. Farmer rode with him in the front seat. Mrs. Hamilton and her mother rode in the rear seat. An accident occurred and in a subsequent suit by Mrs. Hamilton against the driver of the other car, it was held that the negligence of Mr. Hamilton should be imputed to his wife, the court saying, 440 S.W.2d 1. c. 952:

"The law in Missouri is that negligence of the driver of an automobile is imputable to an occupant and bars his recovery against third persons where the driver and occupant are joint owners engaged in a joint enterprise, either of business or pleasure, because neither has any more, nor any less, right of control than the other. Tannehill v. Kansas City C. & S. R. Co., Mo., 279 Mo. 158, 213 S.W. 818, 821–822[3]. The rule has been applied to a husband and wife who jointly owned an automo-

bile on a pleasure trip with friends and to visit a nursery to inspect planting stock for their home, Roddy v. Francis, Mo.App., 349 S.W.2d 488, 491[1], and where the purpose was to take the wife to work after stopping to purchase groceries, Perrin v. Wells, Mo.App., 22 S.W.2d 863, 865[3]."

It would appear to be a fair inference in both Roddy and Hamilton that the husband's negligence would not have been imputed to the wife if the automobile had not been jointly owned.

■■ Certainly in the case now under consideration the record before us would not justify imputing negligence of Lewis Stover to his wife if we eliminate the factor of joint title to the automobile. Mere existence of the husband and wife relationship does not cause negligence of one spouse to be imputed to the other. Moon v. St. Louis Transit Co., 237 Mo. 425, 141 S.W. 870[3]; Borrson v. Mo.-Kan.-Tex. R. Co., Mo., 161 S.W.2d 227[2]; Le Neve v. Rankin, Mo.App., 341 S.W.2d 358[8]. Nor would the trip to visit friends and attend a wedding cause his negligence to be imputed to her. Trips for some family purpose or for mutual pleasure have been held not to result in imputing negligence of the husband-driver to his passenger-wife. Corn v. Kansas City, C. C. & St. J. Ry. Co., Mo., 228 S.W. 78[2]; Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111[12]. Hence, if the negligence of Lewis Stover is to be imputed to Ruby Stover in this case, it must be on the basis that the automobile was jointly owned.

Our research involving cases from other states on this question discloses a considerable split of authority on the subject. Some states hold that negligence of the owner-driver is imputed to the passenger-owner, based upon the joint ownership. However, cases from other states hold to the contrary. In that connection, we note that Professor Fleming James, Jr., writing in 28 Tulane Law Review 161, at 214 says: "The case in which driver and passenger have joint or common ownership or possession of the vehicle has sometimes been giv-

en as the classic example of the nonbusiness joint enterprise. Yet here again where husband and wife are co-owners, there is a growing judicial reluctance to find the requisite control from that fact alone." Under such circumstances, we have concluded, as requested by plaintiffs, to re-examine this question.

As indicated in the foregoing quotation from Hamilton v. Slover, the basis in most cases for imputing negligence of the owner-driver to the passenger co-owner is the existence of an alleged equal right of possession and control. The question we must decide is whether such presumed right is actually realistic. Plaintiffs' brief states it thus: "How much true control, or right of control, did she have as she sat in the front seat of that car and the Patrick car came into view? From a practical standpoint, she had none. Her husband's hands steered the course of the car, shifted gears and turned off the ignition. It was his foot which applied the brakes. She gave him no direction, and if she had, it would have been unavailing."

In the recent case of Parker v. McCartney, 216 Or. 283, 338 P.2d 371, the Supreme Court of Oregon considered an appeal in which the sole question was whether negligence of the co-owner-driver (the wife) should be imputed to her co-owner-passenger (the husband). In discussing the asserted right of control by the passenger, the court said, 338 P.2d l. c. 372:

"Defendant acknowledges that a co-owner of nonfungible personal property in possession may usually exclude his co-owner from asserting the right to immediate seizure of possession. 4 Am.Jur., Cotenancy, 93, § 23. He says the rule does not apply in this instance when both owners were present in the car and that plaintiff's co-ownership entitled him to assert immediate control. Whatever may be the property right generally of one co-owner of proper-

ty to seize possession from another co-owner we believe it ignores the realities of life to apply such a theory to a motor vehicle in operation upon a street or highway.

"No one could sensibly contend that co-ownership entitled a nondriving co-owner to directly interfere with the actual manipulations of driving. Such hazardous conduct could not be tolerated for obvious reasons. Nor does such relationship, in and of itself, permit that type of control which creates the unequivocal right to designate destination, route, course, or manner of operation, speed and other factors indicating control in the more remote sense. We can conceive of situations in which other factors would establish one co-owner as the managing owner. * * * But in the absence of any evidence establishing such a right of control, either by status or agreement, we cannot say that a nondriving co-owner has the unquestioned right to assert authority over the driving co-owner. In this instance it is conceded that plaintiff did not even know how to drive a car. It would seem, therefore, sheer mockery to say that nonetheless this man had the right to direct the operation of the car." [4]

In Sherman v. Korff, 353 Mich. 387, 91 N.W.2d 485, the Supreme Court of Michigan considered the question of whether co-ownership of an automobile being used on a fishing trip by a husband and wife gave a realistic right of control so as to cause the negligence of the driving-spouse to be imputed to the passenger-spouse. In holding that it did not, and in refusing to impute negligence of the driver-spouse to the passenger-spouse, the court said, l. c. 486: "Divorcing ourselves, as we must if we are to do justice, from the baleful influence of a pernicious fiction, what control or right of control has a passenger, even though he may be a co-owner, as the car speeds down the highway, driven by the other co-owner? Any attempted exercise of the right of control by wresting the

4. See also the later cases of Blevins v. Phillips, 218 Or. 121, 343 P.2d 1110, and Johnson v. Los Angeles-Seattle Motor Express, Inc., 222 Or. 377, 352 P.2d 1091, both of which approve the rule announced in Parker.

wheel from the driver would be foolhardy. Equally menacing to the driver's efficient operation of the machine are raucous reproaches, strident denunciations, or even persistent unctuous admonitions from the back seat." In support of its position, the Michigan court cited Painter v. Lingon, 193 Va. 840, 848, 71 S.E.2d 355, 360, and Jenks v. Veeder Contracting Co., 177 Misc. 240, 30 N.Y.S.2d 278, affirmed on this point 264 App.Div. 979, 37 N.Y.S.2d 230; Id., 290 N.Y. 810, 50 N.E.2d 231.

Subsequently, in speaking further on the matter of control and while discussing the relationship between the husband and wife who were there involved, the court said, 91 N.W.2d l. c. 489:

"Putting from our minds for the moment the seductions of easy fictions, what is the realistic legal situation of the parties here before us? Among several thoughtful analyses that have come to our attention, that of the Minnesota court in Christensen v. Hennepin Transportation Company, Inc., 215 Minn. 394, 10 N.W.2d 406, 412, 147 A. L.R. 945, seems most clearly in point. The court held, in part:

" 'In the instant case, plaintiff and her husband apparently were co-owners of the automobile in question. They were regarded as such throughout the case. The husband apparently was in possession of the car and exercising dominion over it, for he invited his wife to ride with him the same as one in possession might invite a person bearing him no relationship. At least, the inference was permissible that he was in possession and had control at the time.

" 'Ownership of an automobile in which the owner is riding, but which is being driven by another, does not establish as a matter of law right of control in the owner. Right of control may be surrendered, as it often is, where the owner parts with the possession of his car to another. In that situation the parties stand in the relationship of bailor and bailee. The negligence of a bailee in operating an automobile is not imputable to the bailor. Mogle

v. A. W. Scott Co., 144 Minn. 173, 174 N. W. 832. The existence of the marriage relationship between the parties does not change their relationship or liabilities with respect to bailed property.' "

A similar view was expressed in Rodgers v. Saxton, 305 Pa. 479, 484, 158 A. 166, 168, 80 A.L.R. 280, when the court said: "A joint or shared control of an automobile in which one is riding as a passenger does not necessarily arise from the passenger's marital relationship with the driver or from the fact that the passenger is the car's owner. The inference that the owner of the car was the bailor and the driver was the bailee is an equally logical inference * * *."

In Parker v. McCartney, supra, the defendant not only asserted that co-ownership entitled the passenger-owner to exercise control over the vehicle, but also that such right of control established an agency relationship, the result of which would cause negligence of the driver to be imputed to the passenger. That contention also was rejected, the Oregon court saying, 338 P.2d l. c. 372:

"Defendant overlooks the simple fact that co-ownership itself refutes agency. In the absence of some additional status, such as that of partners, we find nothing in the law that imposes agency, ipso facto, upon common owners of property. In fact it is held that the relationship of cotenants between different owners of undivided interest in property does not create the relationship of principal and agent between them. Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188; 14 Am.Jur., Cotenancy, 78, § 4 et seq. Co-ownership is actually the antithesis of an employer-employe or principal and agent relationship. The parties are equal in status and ownership. One may commit the property only to the extent of his ownership."

Another rather recent case holding that the negligence of the driver-husband was not imputable to the passenger-wife, even

though she was a co-owner of the vehicle, is Porter v. Wilson, Wyo., 357 P.2d 309. That case reviews a number of the authorities, pro and con, and then concludes, l. c. 315:

"It seems to us that the cases in which the negligence of the driver has been held to be imputable to the spouse-owner-passenger are much more summary in nature than those in which the negligence has not been held to be imputed. In other words, the imputation has been dependent upon a formula which because of its adoption by a number of courts is being perpetuated without inquiry. It is significant that opinions on this subject have seldom stated with any clarity whether or not the presumption of control of the owner-spouse-passenger over the driver is one of law or fact. If the presumption in this situation is one of fact, we immediately recall the words of Greenleaf, Evidence, 1852, p. 55, quoted with favor in 9 Wigmore, Evidence, 3d ed., p. 288: Presumptions of fact 'are in truth but mere arguments * * *. They depend upon their own natural force and efficacy in generating belief or conviction in the mind * * *.'

"The lack of unanimity among the courts and the numerous bases for holding that a driver's negligence is imputable to the spouse-owner-passenger in themselves tend to generate uncertainty rather than the 'belief or conviction in the mind' mentioned by Greenleaf. On the other hand, those courts which have been reluctant to impute a driver's negligence to the spouse-owner-passenger have inquired quite carefully into the realities of motor vehicle experience and have sought to have a rational basis for their holdings. They have presented reasoning which seems to have gone unanswered either by court or counsel, and we are inclined to think there is merit in their views."

We are impressed by the reasoning in these cases holding that co-ownership of an automobile does not give a realistic right of control over its movement to a passenger-owner and that absent evidence of other facts which establish a basis for imposing liability on the passenger-wife for acts of her driver-husband, the negligence of the latter should not be imputed to the former, merely because of joint ownership of the vehicle. Automobiles are frequently jointly titled for various reasons, such as minimizing inheritance taxes, or avoiding the necessity of probate to transfer title to the automobile on death, or to facilitate financing, or for other reasons, none of which have anything to do with a right of control in the operation of the vehicle at the time it is being operated on the highway by the co-owner spouse. Such joint ownership is not a sufficient basis of imputing negligence of a driver-spouse to a passenger-spouse.

Accordingly, we hold that the negligence of Lewis Stover was not imputed to Ruby Stover, and hence the action of the trial court in granting her a new trial based on error in Instruction No. 8 should be affirmed. This necessarily means that on retrial Instruction No. 5, which was a contributory negligence instruction based on negligence of Lewis Stover, should not be given.

We affirm as to the new trial ordered for Ruby Stover on Count I, but we reverse and remand as to Count II, with directions to reinstate the verdict against Lewis Francis Stover and in favor of defendant on that count.

PER CURIAM.

The foregoing opinion by FINCH, J., written in Division Two, is adopted as the opinion of the Court. The cases of Hamilton v. Slover, Mo., 440 S.W.2d 947, Roddy v. Francis, Mo.App., 349 S.W.2d 488, and Perrin v. Wells, Mo.App., 22 S.W.2d 863, insofar as they conflict with this opinion, should no longer be followed.

All concur.