Gladys DICKEY, Plaintiff-Respondent,

v.

Charles NATIONS, Defendant-Appellant.

No. 34138.

Missouri Court of Appeals,
St. Louis District.

March 28, 1972.

Edmund W. Albright, St. Louis, for plaintiff-respondent.

Murphy & Kortenhof, by George A. Adolf, St. Louis, for defendant-appellant.

L. F. COTTEY, Special Judge.

The two questions presented on this appeal are both to be decided, by stipulation of the parties, on these agreed facts:

Plaintiff's husband picked her up at a physician's office, following her treatment there, and undertook to drive her home in their jointly owned automobile. On the way, he ran a red light at an intersection and collided with an automobile driven by defendant. In this suit for damages for her resultant injuries, plaintiff alleged that defendant was negligent in the operation of his automobile; and there was evidence to support that charge. Defendant pleaded contributory negligence, on the theory that the negligence of plaintiff's husband in running the stop light was "imputable to plaintiff Gladys Dickey who was the (jointly) titled owner and in joint control of the automobile at the time of the accident." In line with that theory, the court gave the jury the following instruction:

"Your verdict must be for the Defendant whether or not Defendant was negligent, if you believe:

"First, Plaintiff's driver, Glen Dickey, violated the traffic signal and,

"Second, Plaintiff's driver was thereby negligent, and,

"Third, such negligence of Plaintiff's driver directly caused or directly contributed to cause any damage Plaintiff may have sustained."

A verdict for defendant ensued, and it is obvious the instruction invited it.

On at least three occasions prior to the trial of this case, the Missouri courts had held that joint ownership of the family automobile afforded a sufficient basis for imputing the driver-spouse's negligence to the injured passenger-spouse so as to bar her recovery from a concurrently negligent third party. Perrin v. Wells, Mo.App., 22 S.W.2d 863; Roddy v. Francis, Mo.App., 349 S.W.2d 488; Hamilton v. Slover, Mo., 440 S.W.2d 947. Thirty-three days before the trial of this case began, however, in an opinion not published in the Advance Sheets until thirteen days after the trial ended, the Supreme Court repudiated that doctrine and overruled the cases that had previously approved it. Stover v. Patrick, Mo., 459 S.W.2d 393. When that decision was brought to the trial court's attention, plaintiff's motion for new trial was sustained for error in giving the quoted instruction. Defendant appeals.

His first point is that when the Supreme Court overturns a settled rule of substantive law, the effect of its decision ought to be deferred until such time as the

bar has had an opportunity to acquaint itself with the new rule, citing Bell v. Pedigo, Mo., 364 S.W.2d 613, 620, where the effect of a decision on a procedural matter was postponed until publication of the opinion in the Advance Sheets.[1] No doubt the Supreme Court has a very considerable discretion in matters of this kind; but it is one thing for them to exercise it and another thing altogether to expect us to exercise it for them. We are bound by the policy approved in Koebel v. Tieman Coal & Material Co., 337 Mo. 561, 85 S.W.2d 519, 524–5, where it was said that when "former decisions are found to have approved an incorrect rule of general or substantive law, we have, in overruling such former cases, applied the correct rule in the case in which it is announced, and in doing so made it retroactive in effect, and have thereafter applied the correct rule in all cases coming before us, though in doing so it operates retroactively." This, because the ruling in the earlier cases "never was

the law and the case in hand is decided the same as if such overruled case[s] had never been written." To the same effect, see Aronson v. Hercules Life Ins. Co., Mo. App., 131 S.W.2d 852, 857. It follows that an instruction submitting a theory of defense that "never was the law" is erroneous, whether the error was known or not at the time of the submission.

■ For his second point, defendant argues that even if the joint ownership of the spouses' automobile be disregarded, the instruction was still proper in this case because "it is quite clear that plaintiff herein was engaged in a joint enterprise with her husband and that his negligence may be imputed to her as a defense to this action." Basic to that conclusion, obviously, is the assumption that a man who extends to his wife the courtesy of driving her home from town has somehow involved her in a venture of grave legal implication and potentially distressful consequences.[2] It

---

1. Also cited, for no reason apparent to us, is Abernathy v. Sisters of St. Mary's, Mo., 446 S.W.2d 599, 606, which demolished the previously impregnable defense of charitable immunity in cases involving eleemosynary institutions. An order was appended to that opinion limiting its effect to "causes of action arising *after* its date. But it nowise affected pending cases based on causes of action that arose *before* that date, as demonstrated in Burns v. Owens, Mo., 459 S.W.2d 303, 306, and Bodard v. Culver-Stockton College, Mo., 471 S.W.2d 253, 254–5. There is no difference, so far as this case is concerned, between *Abernathy* which abolished a cherished defense in one category of cases, and Stover which abolished a recognized defense in another category. Both point to the same end, viz., that the latest decision will control in all cases then pending.

2. Counsel may be confusing *mutual* benefit, which is so essential to a finding of joint enterprise, with *concurrent* benefit, which is another thing entirely. The one term implies identity of purpose, the other independence of purpose with only a coincidental opportunity to accomplish it in company with another. So, if a man homeward bound picks up a hitch-hiker who only wants to ride to the next road

south, the two are not, even during that leg of the journey, joint venturers, because they have no common purpose which, when accomplished, will be *mutually* rewarding. They are host and guest, sharing each other's company but nothing else. There is no joint control of the automobile; responsibility for its operation rests with the host.

Remembering that Mr. and Mrs. Dickey's trip served no business purpose and was not prompted by any profit motive, and bearing in mind that "(m)ere existence of the husband and wife relationship does not cause negligence of one spouse to be imputed to the other," Stover v. Patrick, supra, 398, and, therefore, that they must be treated as strangers for the purpose at hand, there is no difference *on principle* between their trip in this case and that of the host and his hitch-hiker in the hypothesized case. All they had in common was their destination; (as was true of the host and the hitch-hiker while they rode together). No doubt it was to their concurrent advantage to reach it, but that inference will not support a further one, viz., that they had a common purpose in reaching it or that their arrival would have been *mutually* beneficial to them. Absent proof on that score, no joint enterprise can be found.

would be interesting to examine that proposition further, but there is no necessity for doing so in this case. It is enough to say: First, that evidence tending to establish the agency in cases of this kind raises only a disputed issue of fact; second, that such issue must be submitted to the jury, and a finding made upon it, before the consequences of it can be invoked. Sanfillippo v. Bolle, Mo., 432 S.W.2d 232, 234. But in this case it was not submitted. The instruction simply *assumed* agency, and only told the jury the consequences of it. An instruction that ignores an issue of fact vital to the conclusion it invites is fatally defective.

The trial court's order is affirmed.

BRADY, C. J., and DOWD, J., concur.