Ivan Lee HOLT, Jr., et al., Plaintiffs-
Appellants,

v.

Russell MYERS and Marshall Black, d/b/a
Myers & Black Contracting Co.,
Defendants-Respondents.

No. 34549.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 17, 1973.

Niedner, Moerschel, Nack & Ahlheim, St. Charles, for plaintiffs-appellants.

Carstarphen, Harvey & Wasinger, Marion F. Wasinger, Hannibal, McIlroy & Millan, John M. McIlroy, Bowling Green, for defendants-respondents.

KELLY, Judge.

In this appeal from a judgment for the defendants in a suit for both personal injuries and property damages the plaintiffs, Ivan Lee Holt, Jr., Mary E. Holt and the American Insurance Company of New Jersey, sought damages in a total amount of $99,500.00, arising out of an explosion and fire which destroyed a farm home in Pike County, Missouri, on the night of June 16, 1968. After a jury trial and a verdict for the defendants, the trial court entered judgment in accord with the jury verdict, a timely motion for new trial was filed, denied and notice of appeal followed.

On appeal the plaintiffs contend: first, the trial court erred in not declaring a mistrial when defendant Myers testified concerning the number of members in his family, and the second and third contentions are directed against a contributory negligence instruction submitted to the trial court by the defendants and read to the jury, Instruction No. 6.

The defendants contend that the evidentiary matter complained of was not erroneously admitted, but was invited by evidence offered by the plaintiffs, and the contributory negligence instruction was proper. They further take the position, 1) that the Holts were not the real party in interest in Count I of the petition, and the trial court should therefore have directed a verdict for the defendants at the close of the plaintiff's evidence and also at the close of all the evidence; 2) that the plaintiffs are barred from recovery against the defendants and the trial court should have directed a verdict in their favor because the plaintiffs' damages were produced by an intervening cause; and 3) the Holts were guilty of contributory negligence as a matter of law.

The facts are that the Holts owned a home on a ten (10) acre farm in Pike County, Missouri, which they had purchased in March, 1968, for a total price of $25,000.00. The house was an old house, originally built in 1859, and was in need of repairs and remodeling. Plaintiff American Insurance Company of New Jersey (hereinafter referred to as the "insurance company") on the 2nd day of March, 1968, by endorsement on a Homeowners Policy already issued to the Holts, undertook to insure the dwelling for $25,000.00, the appurtenant private structures for $2,500.00, the unscheduled personal property for $12,500.00 against loss by fire and other perils and $5,000.00 for additional living expenses.

After making the purchase the Holts contracted with the defendants, a partnership engaged in the general contracting

business in the area, to remodel the house. The bulk of the remodeling was concerned with the exterior of the two-story house, although the contract did call for some interior repairs also. During the course of the remodeling the Holts and their son and daughter-in-law spent some time on the premises, more particularly on week-ends, and the Holts had moved many of their personal furnishings into the house.

By early June, 1968, the defendants had substantially completed most of the work called for in their contract and among the last items to be completed was the removal of a gas space heater from the hearth in front of a fireplace in a room on the first floor of the house referred to as "the library." The house had no central heating, and the Holts wanted the fireplace in the "library" reconverted into a wood-burning fireplace. To do this required the removal of the gas space heater, the knocking out of the bricked-in fireplace opening and installation of fire brick within the fireplace proper.

On June 8, or 9, 1968, while defendant Myers was on the premises, Mr. Holt instructed him that he wanted the space heater and fireplace work completed between that day and the 21st day of June, 1968, because that was when Mr. Holt would be commencing his vacation. Mr. Holt also told Mr. Myers that the Holts would not be at the farm the following week-end, because Mr. Holt, who is a judge of the Circuit Court of the City of St. Louis, would be attending a Judicial Conference in Springfield, Missouri, that week. Mr. Myers also testified that he was told by Mr. Holt that no one would be at the house the week-end of June 14–16, 1968.[1] On Wednesday, June 12, 1968, Mr. Holt called Mr. Myers and asked if he had started work on the fireplace. Mr. Myers told Mr. Holt that he would get to it. Mr. Holt then again told him that they were going to be gone and nobody would

be at the farm that week-end. On the 13th day of June, 1968, Mr. Holt wrote to Mr. Myers advising him that the Holts would be at the farm on the 21st or 22nd (of June) to stay for several weeks and that Mr. Myers could come by at his convenience after that for them to finish "settling up." Mr. Holt stated in this letter that he was counting on everything being done by then.

When the Holts purchased the farm and the house, there was a 1000 gallon propane gas tank situated to the rear of the house, some little distance from the house proper, which had been piped into the house for gas service. Subsequently they had a new hot water heater and gas stove installed, in addition to the space heater, by a contractor other than the defendants. The water heater was installed on the first floor in the "back hall." The gas from the tank in the yard was distributed to the other gas operated appliances through copper tubing connected in the basement to a line from the gas tank.

The water system came from a "vein well" on the farm a little distance to the east of the house, and water was pumped into a cistern beside the back porch. A shallow well pump situated in the basement of the house brought the water from the cistern and into the water pipes within the house. This pump was controlled by a small pressure tank and when the water pressure fell below a certain pressure the pump would be activated electrically.

On Friday, June 14, 1968, Mr. Myers, accompanied by his 14 year old son, went to the farm to remove the space heater from the hearth in the "library." He went to the propane gas tank in the yard prior to commencing disconnection of the space heater and turned off the gas valve there. He then checked the gas stove in the kitchen to confirm that the gas was shut off, and after smelling around the space heater and lighting a match to reassure himself

[1]. Both Mr. and Mrs. Holt testified that they told Myers that they would not be at the farm that week-end, but denied telling him that no one would be there.

that the gas supply had been shut off and no gas was coming to the appliance, he proceeded to remove it. He also disconnected the copper tubing which conveyed the gas to the space heater, removed it from a hole in the floor of the hearth and disconnected it from a "tee" connection in the basement. With the assistance of his son he removed the space heater and copper tubing from the house.

After this was accomplished Mr. Myers took an old galvanized cap from his tool box and put it over the end of the "tee" connection to keep dust, dirt and bugs out of the gas line. This cap was not the proper type of cap to seal the "tee" and he knew that if anyone turned the gas on at the tank gas would leak from the "tee" connection. When this was done Mr. Myers commenced tearing the brick and stucco out of the fireplace. He worked until almost 4:30 p. m. when he quit for the day.

Sometime after Mr. Myers left the house, but that same day, the Holts' son and daughter-in-law arrived at the farm. They did not recall the exact time, but they had eaten supper and it was still light out. They took a walk around the premises and then shortly thereafter went to bed for the night. The following morning, Saturday, June 15, 1968, after arising the young Holts attempted to prepare breakfast on the gas stove in the kitchen. When the gas stove was turned on it would not light. Lee Holt, the son, looked around the house and discovered that the space heater had been removed from the "library" and he assumed that whoever had removed it had forgotten to turn the gas back on. He then went to the gas tank in the yard where he found that the valve on the tank was closed. He turned the valve so that the gas would be released into the gas lines and returned to the house. He saw no signs or notices anywhere warning that the gas should not be turned on.

After returning to the house Lee Holt lit the pilot in the stove and in the water heater and then started cooking breakfast. The flame of the stove flickered—"it didn't seem to be a strong flame." Although the gas stove was not operating normally they did manage to cook breakfast on the stove. They remained at the farm until Sunday afternoon but they did not use the gas stove anymore, cooking their meals on a barbecue grille in the yard. They had hot water all week-end and at no time while they were in the house or around the premises did either of them smell gas. When they left the farm the gas valve was not turned off at the tank.

The evidence was that propane gas is heavier than air and would displace air and spread out over the basement seeking the lowest level of the basement floor if it escaped.

On Sunday evening, June 16, 1968, the Holts arrived at the farm sometime after the young Holts had left but with no knowledge whether the young Holts had or had not been on the premises. When they entered the house by the rear door Mrs. Holt told Mr. Holt that she smelled gas. He did not; but he told her that he thought it came from where the space heater had been removed and was residue in the gas pipes. He did not further investigate the source of the smell and his statement satisfied Mrs. Holt. They then started to prepare supper on the gas stove but it didn't operate properly and did not give a flame. Mr. Holt remarked that "They have been working on the heater. It's turned off. We will use the electricity." They turned off the gas stove and cooked their steak on an electric rotisserie on the back porch of the house.

After supper the Holts watched television and sometime around 10:00 p. m. Mrs. Holt went into the kitchen to wash the dishes. As she turned on both water faucets an explosion occurred, throwing her off her feet and causing her to strike her shoulder against something. A hole was blown in the kitchen floor. Both of the Holts were injured and Mr. Holt drove

Mrs. Holt to the hospital in Louisiana, Missouri, where they spent the night. While the Holts were gone from the premises the house burned to the ground, destroying both the house and its contents.

The insurance company, after the Holts filed a claim under the terms of their homeowners policy, paid them a total of $38,604.00; $25,000.00 for the loss of the dwelling, $12,500.00 for the unscheduled personal property and $1,104.00 for additional living expenses. Mr. Holt then executed a "Release and Subrogation Receipt" for this sum.

Plaintiffs filed this suit in four counts. Count I of the petition is for the property damage sustained by the Holts due to the alleged negligence of the defendants and seeks a single judgment of $84,000.00 in favor of all plaintiffs, or, in the alternative, for a judgment in favor of either the Holts *or* the insurance company in that amount. Count II of the petition is a suit by Mr. Holt for his personal injuries and seeks a judgment for $5,000.00. Count III is for hospital and medical expenses in the amount of $3,000.00 which Mr. Holt was required to incur as a result of the injuries sustained by Mrs. Holt. Count IV is Mrs. Holt's suit for personal injuries and seeks a judgment for $7,500.00 for same.

The defendants' "Answer to Plaintiff's Second Amended Petition" consisted of a general denial, an allegation that the Holts were not the real parties in interest because they had assigned said cause of action and subrogated the insurance company to whatever interest they might have in the cause of action, and an allegation that the Holts were guilty of contributory negligence in a number of ways and thus barred from recovering.

We shall not consider the points raised on appeal by all parties to this suit.

The defendants in their answer filed to the Second Amended Petition raised the issue of real party in interest and in their respective motions raised the issue of the splitting of causes of action which is the fundamental question involved in the real party in interest Rule. Rule 52.01, V.A. M.R. and Section 507.010, RSMo 1969, V. A.M.S.

The purpose of the real party in interest Rule is to enable those who are directly interested in the subject matter of litigation and entitled to reap its fruits be the ones to maintain the action. Smith v. Cowen, 350 S.W.2d 96, 98[4] (Mo.App. 1961). The Rule performs the useful function of protecting individuals from harassment and multiple suits by persons who would not be bound by the principles of res adjudicata if they were not prevented from bringing subsequent actions by a real party in interest rule.

Defendants' contention in this respect is based upon the provisions of a Homeowners Insurance Policy wherein the Holts are the insured and the "Release and Subrogation Receipt" signed by Ivan Lee Holt, Jr. These provisions of the homeowners policy are set out in a footnote because our study of the policy demonstrates that it has no application to the issues presented in this case. The paragraph—Paragraph 11—of the policy relied on by defendants refers to liability coverage afforded to the homeowners under Sec. II of the basic policy and does not refer to nor control the coverages afforded the Holts under Sec. 1 of the policy pursuant to which payments were made to them and for which the Receipt was executed.[2] Reference is also

2. "11. Subrogation – Coverages A, C and D. In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights." This paragraph is contained on a page identified as "Other Provisions Applicable to Sections I and II except as otherwise indicated, and is paragraph 11 under "Conditions Applicable Only to Section II." Section II of the policy includes

made to Lines 162–165 of the basic policy which states: "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

Because we are reversing and remanding this judgment for a retrial we shall dispose of the real party in interest issue raised by the defendants and determine whether the Holts assigned their claim.

Ivan Lee Holt, Jr., executed a "Release and Subrogation Receipt," which, for reasons of brevity is set out in a footnote.[3]

The named insureds in the homeowners policy as of the date of the explosion were Ivan Lee Holt, Jr., and Mary Edwards Holt, his wife. The limits of the coverage afforded have been previously stated supra. While Mrs. Holt did not sign the receipt she acknowledged in her testimony that "they" were paid $25,000.00 for the dwell-

coverage for: "A. Bodily Injury Liability; B. Medical Payments; C. Property Damage Liability; D. Fire, Explosion, Smoke, Smudge; E. Physical Damage to property of others." Paragraph 2 of the same "Conditions" is as follows: "Limits of Liability; Settlement Options —Coverages D and E. The limit of liability stated in the declarations for coverage D is the limit of the Company's liability for all damages as the result of any one occurrence. However, the amount stated in the declarations as "deductible", if any amount is so stated therein, shall be deducted from the total amount of all sums which the insured shall become legally obligated to pay as damages as the result of any one occurrence, and the Company shall be liable only for the difference between such deductible amount and the limit of the Company's liability for each occurrence as stated in the declarations.

The Company may pay any part of or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, the insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

3. RECEIVED of the American Insurance Company of New Jersey the sum of Thirty Eight Thousand Six Hundred Four Dollars ($38,604.00) in full payment, release and discharge of all claims and demands of the undersigned against the said Company, arising from or connected with any loss or damage by reason of explosion and fire which loss or damage arose or occurred on or about the 16 & 17 day of June, 1968; and in full payment, release and discharge of all claims and demands against the said Company under the certain policy of insurance No. H3119105 issued through the W. H. Markham Agency of the said Company.

"In consideration of and to the extent of said payment the undersigned hereby subrogates said Company, to all of the rights, claims and interest which the undersigned may have against any party, person, persons, property or corporation liable for the loss mentioned above, and authorizes the said Company to sue, compromise, or settle in the undersigned's name or otherwise all such claims and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the undersigned, with the same force and effect as if the undersigned executed or endorsed them.

"Warranted no settlement has been made by the undersigned with any party, person, persons, property or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without the written consent of the said Company and the undersigned covenants and agrees to cooperate fully with said Company in the prosecution of such claims, and to procure and furnish all papers and documents, in the undersigned's possession, necessary in such proceedings and to attend court and testify if the Company deems such to be necessary but it is understood the undersigned is to be saved harmless from costs in such proceedings.

"IN WITNESS WHEREOF, I have hereto set my hand and seal this 4th day of December, 1968.
WITNESS:
/s/ Ursula D. Neaf
    /s/ Ivan Lee Holt
        7056a Forsyth
        St. Louis, Missouri
        63105

ing and $12,500.00 for the contents. She further testified that the contents of the house, which were antiques, the bulk of which had been inherited from both her family and the family of Mr. Holt, had a reasonable market value of $33,000.00, the amount sought and pleaded as the reasonable value of the furnishings and fixtures and personal effects of the plaintiffs in paragraph II of Plaintiffs' Second Amended Petition.[4] The monies paid to the Holts by the insurance company did not, under their evidence, fully indemnify them for their losses which they contend amounted to some $84,000.00; but fell short by some $45,396.00.

Defendants in their brief cite a number of cases which they contend support their position. Nevertheless, the validity of these decisions hinges on one legal proposition, and that is whether the document executed by the insured constituted an assignment of all of his claim to the insurer; if it did, then the insurer is the real party in interest and the insured is not. Part of the problem is the failure to distinguish clearly between "assignment" and "subrogation."

In Missouri there is a distinct difference between the assignment of a claim and subrogation to a claim. When there is an assignment of an entire claim there is a complete divestment of all rights from the assignor and a vesting of those same rights in the assignee; but, in a case of subrogation, only an equitable right passes to the subrogee and the legal right to the claim is never removed from the subrogor and remains with him throughout. Kroeker v. State Farm Mutual Automobile Ins. Co., 466 S.W.2d 105, 110[5] (Mo.App., 1971).[5]

We conclude from reading the "Receipt" signed by Mr. Holt for the $38,604.00 that it was the intention of the parties to the insurance contract that this was, as it states, a "Release and Subrogation Receipt" for the monies paid to indemnify the Holts pursuant to the homeowners policy and not an assignment of their entire claim against the defendants. Nowhere in this "Receipt" does the word "assign" appear. It is no concern of the defendants whether an insurance company, which by reason of its contract of insurance with the plaintiffs, has paid the damages to the extent of the policy limits is entitled to subrogation to the proceeds of recovery, or whether all or part of the damages are to be finally received by the insurer or the insured, or that all of the "proceeds" of the cause of action have been assigned. Hayes v. Jenkins, 337 S.W.2d 259, 261 (Mo.App., 1960). The general rule is that a bare legal title to the action is sufficient to maintain an action at law. Hayes v. Jenkins, supra. Long ago it was held that the real party in interest statute applies only where the entire or whole cause has been assigned, and this because *"if the cause itself* has been assigned the claimant would no longer have any interest and could not maintain it." [6]

Here, plaintiffs Holt subrogated the insurance company "to the extent of said payment." The payment referred to was made pursuant to the insurance policy No. H3119105 "issued through W. H. Markham Agency of the said Company." and defendants are not prejudiced in any manner by this subrogation to the extent of the payment made to the Holts by the insurance carrier.

---

4. The difference between the total of the claim for the $25,000.00 for loss of Dwelling and the $12,500.00 for loss of Unscheduled Personal Property and the total payment of $38,604.00 is $1,104.00 for Additional Living Expense.

5. There is an excellent discussion of the distinction between an "assignment" and a "subrogation" in Kroeker v. State Farm Mutual Automobile Insurance Co., 466 S.W.2d 105, lc. pp. 109 and 110.

6. See: Anno. 13 A.L.R.3rd Sec. 5 [a] p. 159, Status of insured and insurer as real parties in interest.

The defendants rely on Ewing v. Pugh, 420 S.W.2d 14 (Mo.App., 1967) and Steele v. Goosen, 329 S.W.2d 703 (Mo., 1959). We, however, conclude that Ewing v. Pugh, supra, failed to distinguish between the nature of assignment and subrogation and is not, therefore, controlling in this case.

Ewing, supra, had within its "Subrogation" paragraph the terms "causes of action" which is not present in the "Receipt" here under consideration and we might distinguish the cases on that point alone. We would also point out that as between the insured and the insuror in Ewing the insured surrendered his right to release, arrive at a settlement with or compromise his claim or cause of action with the third party who might be liable in damages to him. In this case, on the other hand, the Holts agreed that they would make no settlement with nor give a release to anyone found to be responsible for the loss *without* the written consent of the insurer. The insurer thus recognized the legal right of the Holts to the cause of action, and the equitable title it acquired by subrogation to the extent it had paid pursuant to the insurance contract between the parties thereto.

Ewing, supra, 420 S.W.2d p. 18, relied on Hoorman v. White, 349 S.W.2d 379 (Mo.App., 1961) as authority for its ruling; however, a close reading of the "Auto Repair Order and Release" upon which the court decided Hoorman reveals that it contained a specific assignment of the rights of the assured to the Company with the right to prosecute said action or actions in the name of the *"assignor."*

With respect to Steele v. Goosen, supra, the plaintiff therein executed a document wherein he *assigned and transferred to the insurance company* all of his interests "to the extent of the amount" paid to him by the insurance company. In ruling that the trial court did not err in dismissing Count III of plaintiff's petition, wherein he sought to recover $2,000.00 for collision damage to his automobile, on the grounds that he was not the real party in interest, the court held, 329 S.W.2d pp. 711–712:

"The document signed by plaintiff constituted an assignment to the insurer of plaintiff's entire claim for property damage, although, as the policy provided, plaintiff received $50 less than the cost of repairs to his automobile. * * * It is immaterial to any of the issues here that the document signed by plaintiff limits the insurer's subrogation rights 'to the extent of the amount hereby paid.'"

The court reached the correct conclusion under the facts of that case. However, since we have held that in this case the document executed by Mr. Holt did not constitute an assignment, Steele is not in point.

As we have heretofore said in State ex rel. Home Service Oil Company v. Hess, 485 S.W.2d 616, 618 [3, 4] (Mo.App., 1972):

"It appears that in dealing with real party in interest in subrogation litigation the courts have been mainly concerned with the related concepts of splitting a cause of action and multiplicity of litigation. This has produced the general rule that where a claimant has assigned the entire cause of action to another he no longer has an interest in it and is not the real party in interest. Full payment received by the claimant, however, does not support the inference that an assignment of the cause of action has been made."

Despite the rule against splitting causes of action, the courts of Missouri have, in automobile accident cases where there have been both property damage and personal injuries, permitted the automobile owner to preserve his redress for personal injuries even where he has assigned his claim for property damages to the insurer who has paid for the repairs to his car. General Exchange Insurance Corporation v. Young, 357 Mo. 1099, 212 S.W.2d 396, 401 [12]

(Mo., 1948). And in Home Service Oil Co., supra, this court held that where an oil company's truck exploded and burned because of the oil company's negligence and damaged a loading dock of a truckline as well as the cargo, the truckline was the real party in interest rather than three separate insurance companies who paid the truckline for the damages it sustained pursuant to the provisions of their respective insurance policies. At 485 S.W.2d p. 619, the Court said:

> "The 'splitting' prohibition is designed, of course, to avoid harassment of a defendant by a multitude of law suits for damages sustained by the same person from the same tortious act."

In this appeal the defendants are not faced with a multiplicity of suits for the reason that both the subrogor and the subrogee are party plaintiffs in Count I of the petition, and only one verdict and one judgment is sought by the parties plaintiff.

For these reasons we find defendants contention in this respect without merit and therefor find no error in the action of the trial court.

■ Defendants also contend that because Mrs. Holt told Mr. Holt that she smelled gas when they entered the farmhouse they both were aware of the gas in the house and should have investigated the source of the gas; that they subsequently discovered that the gas stove was not operating properly and still made no investigation to determine why it was not. This constituted contributory negligence as a matter of law and thus bars recovery, the defendants would have us rule. However, no authority is cited to support this position.

In Winkler v. Macon Gas Company, 361 Mo. 1017, 238 S.W.2d 386 (1951) the plaintiffs, husband and wife, were injured in an explosion when they went to the basement to light the "sidearm" gas hot water heater for baths. Approximately two hours prior to the occurrence, the lessor's daughter, who had been to the basement, advised the wife that she smelled escaping gas in the basement and that the next time the wife was going to shut off the heater she wanted to be with her. Plaintiff wife admitted this. When she and her husband went to the basement, one of them opened the heater door and the husband lighted a match. Immediately an explosion accompanied by flames occurred injuring both husband and wife. Each plaintiff testified that when they entered the basement they detected no odor of any kind. The defendants, the gas company distributor and the supplier, contended that the wife was guilty of contributory negligence as a matter of law; that inattention and momentary forgetfulness constitute negligence or no excuse for failure to investigate and the plaintiff wife was therefore put upon such notice as to compel her to take some affirmative action before attempting to light the burner. The Court, 238 S.W.2d p. 390, said: "In any event, 'Can the court say as a matter of law that it is negligence for one to strike a match in a room where natural gas is present in sufficient quantity to be detected by smelling it?' Dowler v. Citizens' Gas & Oil Co., 71 W.Va. 417, 76 S.E. 845, 847. It is possible to be forewarned and have some knowledge and yet it does not follow as a matter of course that one's appreciation of the danger is or necessarily must be such that he is contributorily negligent as a matter of law if he proceeds to act as an ordinarily prudent person would in the light of the knowledge and warning. Goldman v. City of Columbia, Mo.App., 211 S.W.2d 541. It is not claimed, of course, that Harold was contributorily negligent as a matter of law and, in all the circumstances, whether Marjorie was guilty of contributory negligence proximately causing her own injuries was for the jury." We are of the opinion that under the facts of this case the Holts cannot be held guilty of contributory negligence as a matter of law; it is for the jury to determine under proper instructions.

The defendants further contend that since it was the Holts' son who turned the gas on after it had been turned off by the defendant Myers, the house as left by the defendants was harmless, and therefore without the intervening act of Lee Holt no damage would have occurred. We conclude, however, that this is a jury question.

The Supreme Court of this state in Fields v. Missouri Power and Light Company, 374 S.W.2d 17, 24 (Mo.1963) said:

"It thus appears, and we think properly so, that in some factual situations when a supplier of gas learns of a defect in a customer's system, merely shutting off the flow of gas is not sufficient when by reason of the location of the device, used to shut off the gas, or because of the characteristics of the device, or because of other facts, an ordinarily prudent person would reasonably foresee that some unauthorized person might turn on the gas before the defect in the customer's pipes would be remedied. In such situation the supplier must, in the required exercise of care, correct the defect, or turn off the gas *and take reasonable precautions* to prevent an unauthorized turning on of the gas." (Emphasis supplied.)

The factual situation presented here causes us to rule that it is a jury question whether it was negligence for Mr. Myers to leave the premises with the "tee" improperly capped even though he turned off the gas valve at the gas tank, without warning of the attendant danger to anyone, authorized or unauthorized, who might seek to turn the gas valve to the on position. If so, then the acts of Lee Holt, if they are found to be negligent, could be found to be a concurring negligence rather than an intervening cause.

We rule this point against the defendants.

Plaintiffs attack Instruction No. 6, the contributory negligence instruction on two grounds:

1. that the instruction is prejudicially erroneous because the first and second submissions were not connected with the conjunction "and"; and

2. the instruction does not conform to Rule 70.01(e) in that it:

a) submits issues not in evidence;

b) does not submit issues of ultimate fact, and

c) it compels imputation of negligence between the parties plaintiff, Ivan Lee Holt, Jr., and Mary Edwards Holt, his wife.

Defendants say that there is no applicable MAI instruction and therefore the omission of the word "and" between the two paragraphs of the instruction was purely a "mechanical" failure and not an effort to improve the instruction. They furthermore take the position that the use of the conjunction was obviated by reference from paragraph Second to paragraph First thereby requiring the jury to find one or more of the factual allegations of negligence set out in paragraph First before the jury could find the plaintiffs contributorily negligent.

Instruction No. 6 was tendered to the trial court by the defendants and was identified by them as being an "MAI 32.01 (Modified) Instruction." Rule 70.01(d). However, the defendants in their brief on appeal now contend that this instruction is not out of MAI.

The guidelines for a not-in-MAI instruction are enunciated in Rule 70.01(e) which requires that a not-in-MAI instruction shall be simple, brief, impartial, free from argument and shall not submit to the jury or require detailed evidentiary facts. Slagle v. Singer, 419 S.W.2d 9, 13 [4-5] (Mo., 1967). Defensive not-in-MAI instructions must, nevertheless, conform to MAI or the philosophy of MAI, Skain v. Weldon, 422 S.W.2d 271, 273 [1] (Mo., 1967); and only ultimate facts bearing on negligence should be hypothesized in a

not-in-MAI instruction. Schlegel v. Knoll, 427 S.W.2d 480, 482 [1] (Mo., 1968). Appellate review is limited to the specific objection raised in the trial court, Vinyard v. Vinyard Funeral Home, 435 S.W.2d 392, 395 [4] (Mo.App., 1968), and carried forward in appellant's brief in this court. Vinyard, supra, l. c. 395(6). Rule 84.04(d) (formerly Rule 83.05(d).

■ Defendants did not submit the question of whether they were negligent to the jury. Other than contributory negligence, the only issue defendants presented was whether plaintiffs sustained damage as a direct result of defendants' negligence— Instruction No. 8, an MAI 33.04(3) instruction.

The instruction under attack is as follows:

"Your verdict must be for the defendants whether or not defendants were negligent if you believe:

First, Plaintiffs either:

smelled gas in the premises on the day of the occurrence and used the facilities about the premises without investigating the origin of the gas, or instructed the defendants the premises would not be used until June 21, 1968, or after, and the defendants started work on the premises, but plaintiffs, contrary to such instructions used the premises without notifying defendants, or instructed the defendants the premises would not be used until June 21, 1968, or after, and the defendants started work on the premises, but plaintiffs, contrary to such instruction permitted their son to use the premises without notifying defendants, or

plaintiffs used the premises knowing of the odor of gas, knowing work was in progress, knowing the gas range was inoperative, and with such knowledge failed to investigate or take precaution;

Second, plaintiff's conduct, in any one or more of the respects submitted in paragraph First, was negligent; and Third, such negligence of plaintiffs directly caused or directly contributed to cause any damage plaintiffs may have sustained."

It is apparent from the form of the instruction under scrutiny that it is a modification of MAI 32.01 and as such it must conform to that instruction or the philosophy of MAI. The question whether the omission of the conjunction "and" between paragraph First and Second of MAI 32.01 is error, had been considered and ruled adversely to the position taken by defendants in this case by both the Supreme Court of Missouri and the Missouri Court of Appeals. Motsinger v. Queen City Casket Company, 408 S.W.2d 857, 860 (Mo., 1966); Slyman v. Grantello, 429 S.W.2d 282, 283 [1] (Mo.App., 1968) and Pavyer Printing Machine Works v. South Side Roofing Co., 446 S.W.2d 445, 450 (Mo. App., 1969).

However, this is not the only reason for holding this instruction prejudicially erroneous requiring that the cause be reversed and remanded for a new trial. We have concluded that plaintiffs' contention that the instruction is erroneous because it submits issues of negligence not supported by the evidence and, further, does not submit issues of ultimate fact, is also well taken.

Rule 70.01(e) requires that where a not-in-MAI instruction is used or where an MAI instruction must be modified to fairly submit the issues in a particular case, such instruction shall be simple, impartial, free from argument and shall not submit to the jury or require findings of detailed evidentiary facts. Subject instruction violates these standards.

Defendants chose to modify MAI 32.01, and submit, in the disjunctive, four separate submissions of negligence to bar the plaintiffs from recovering. Defendants' first submission is that the plaintiffs—all

of the plaintiffs—smelled gas but nonetheless used the premises without investigating the origin of the gas. The uncontradicted evidence is that Mr. Holt at no time smelled the odor of gas. The only knowledge he had was that Mrs. Holt reported to him that *she* smelled gas. The instruction also directs the jury that they might find for the defendants, even though the defendants were negligent, if after the plaintiffs smelled gas they used the premises without investigating the origin of the gas. The evidence—and the only evidence—was that Mr. Holt did look into the "library" and concluded from the fact that the space heater was missing, that the gas odor Mrs. Holt smelled came from the copper pipes which conducted the gas from the tee in the basement to the space heater. Mrs. Holt on the other hand, made no investigation at all, but was satisfied with Mr. Holt's deduction. As submitted, this instruction permitted the negligence of Mrs. Holt, if any, in smelling the gas and not conducting an investigation to be imputed to the other plaintiffs. While this would be proper with respect to Counts I and III, it is prejudicial with respect to Mr. Holt's claim for his own personal injuries—Count II, as we shall discuss more fully hereinafter in this opinion.

Defendants second and third submissions in this instruction are likewise prejudicial and require reversal and remand. These submit to the jury, as negligent acts of the plaintiffs, their failure to advise the defendants that they would be using the premises on the weekend of June 14–16, 1968, when they had previously informed the defendants they would not; and further, that they permitted their son Lee Holt to use the premises without notifying the defendants when the Holts had previously advised the defendants that he would ·not.

This is as logical as contending that a plaintiff in an automobile negligence case is barred from recovering on the basis of contributory negligence where he, prior to the date of the collision, had advised the defendant that he would not be operating his auto through an intersection at a particular location on a specified date and time, e. g., June 16, 1968, at 2 p. m.; but, because of a change of plans; plaintiff, without notice to the defendant, while proceeding through the aforesaid intersection at said time and on said date is collided with by defendant who has failed to yield the right of way to the plaintiff and has also run a stop signal because he relied on the assurance of plaintiff that he would not be there. The statement of the proposition points up how fatuous it is.

■ As submitted, this instruction requires plaintiffs to anticipate the negligence of the defendants and further to anticipate a danger which would not have existed except for the negligence of the defendants. This the law does not require. Taylor v. Dale-Freeman Corporation, 389 S.W.2d 57, 60[1] (Mo., 1965), McCollum v. Winnwood Amusement Co., 332 Mo., 779, 59 S.W.2d 693, 697 (1933). In this respect, the court in Taylor v. Dale-Freeman Corporation, supra, 389 S.W.2d pp. 60–61, said:

" * * * 'Negligence is predicated on what should have been anticipated, rather than what happened.' * * * A finding of negligence is not to be based upon hindsight. * * * 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonable prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated.' * * * the duty of anticipation is not that of prescience; it is the duty of *reasonable anticipation* that harm or injury is a likely result of acts or omissions. * * * A person is not required to look for danger where he has no cause to anticipate it, or when the danger would not exist but for the negligence of another."

Until plaintiffs had reason to suspect otherwise, they were under no duty to anticipate that the defendants would remove the space heater and negligently fail to post some warning of the potential danger should one open the valve on the gas tank.

These submissions also constitute an effort to inject into the case, in a contributory negligence instruction, the purported intervening negligence of the plaintiffs' son in turning on the gas supply and leaving the premises without turning it off. However, there is no evidence to show that the Holts had knowledge that their son and daughter-in-law had been on the premises that week-end nor that they had notice, actual or constructive, that the valve at the gas tank had been turned on by their son. Intervening negligence by one not a party, has no place in a contributory negligence instruction.

Plaintiffs further contend that defendants' Instruction No. 6 imputes to Mr. Holt the negligence of Mrs. Holt in that she did not, after smelling gas, take precautions and thus no one of the plaintiffs could recover. This lawsuit involved several counts as previously stated.

Defendants say that since the plaintiffs combined all four counts in one single submission and submitted their personal injuries by verdict forms alone, they cannot now complain if they led the trial court into error in the contributory negligence instruction.

The negligence of the defendants submitted in plaintiffs' verdict director, Instruction No. 3, was 1) that defendants failed to adequately seal the tee gas pipe fitting which defendant Myers had disconnected, or 2) failed to give any warning of the unsealed tee gas pipe fitting.

Prior to reading the balance of the instructions to the jury after the conclusion of the evidence, a discussion in chambers and out of the presence of the jury, took place between counsel and the trial judge with respect to the burden of proof instruction, MAI 3.01. Plaintiffs' counsel objected to the giving of the Burden of Proof Instruction with the insertion relative to the contributory negligence issue. The trial court then stated that it was giving the MAI 3.01 (Modified) instruction with the contributory negligence insertion in it "on its own motion." The instruction, as modified was read to the jury.

■ It is mandatory that an MAI 3.01 burden of proof instruction be given in every case, and, where appropriate, that the insert advising the jury that where an affirmative defense is submitted by the defendant the burden is upon that defendant to cause the jury to believe the propositions necessary to support the defense that the plaintiffs were contributorily negligent. This logically presupposes a *proper* contributory negligence instruction *will be offered* and given.

Plaintiffs did not, as contended by defendants, submit their personal injuries in the verdict forms alone; Instruction No. 3 submitted plaintiffs' "damages" and that is sufficiently broad to include both property damage and personal injuries. They also submitted their entire damages in Instruction No. 4 and MAI 4.01—Measure of Damages—Personal and Property, instruction. If plaintiffs sought only property damages, MAI 4.02 would have been the proper instruction.

We conclude that defendants' contributory negligence instruction was prejudicially erroneous in that it permitted the jury to impute to Mr. Holt the negligence, if any, of Mrs. Holt, and thus bar a recovery by Mr. Holt for his personal injuries under Count II of the plaintiffs' petition. This is so because the instruction directed the jury that their verdict had to be for the defendants, whether or not defendants were negligent, if they believed that the *plaintiffs* smelled gas but nevertheless used the facilities without investigating the origin of the gas.

There was no evidence that Mr. Holt at any time smelled gas. The evidence was that Mrs. Holt smelled gas and called this to the attention of Mr. Holt. Defendants, in an attempt to offest this error, lift a question and answer from the transcript out of context where Mr. Holt testified that he did not make any further investigation to determine from whence the gas came because "the heater had been removed. I thought it came from there." What the defendants could have submitted, but did not, was whether, after Mrs. Holt smelled the gas and relayed this information to Mr. Holt, he, in the exercise of the care that an ordinarily careful and prudent person would use under the same or similar circumstances, made a sufficient investigation to determine the source of the gas. Her failure, after smelling the odor of gas, with no more, could not be a bar to Mr. Holt's cause of action for his own personal injuries.

By reason of the varied relationships existing between the parties plaintiff, the pleading of their causes of action in four separate counts, and the submission of their case in a single verdict director with separate verdict forms for each count of their petition, it became necessary to consider the substantive law of contributory negligence as applicable to each count and correctly present an instruction, or instructions, which would properly advise the jury of the issues and not misdirect them. This, unfortunately, was not done.

■■■■ With respect to Count I, defendants were confronted with a claim by both husband and wife for damages to property held as tenants by the entirety joined with the claim of the insurance company as subrogee to the extent of its payment under the insurance contract. To the extent of its payment, the insurance company stood in the shoes of the Holts and was therefore subject to the same defenses. "Where either spouse is guilty of negligence as a result of which property owned by both parties under the entireties

theory of property ownership is damaged, neither spouse may recover for the loss sustained." 65A C.J.S. Negligence § 159, p. 200. This same rule prevailed in Missouri with respect to the imputing of the negligence of the driver spouse to the passenger spouse in automobile accident cases where both were riding in a jointly owned automobile barring the passenger spouse from recovering against a third party for her personal injuries as late as 1970. However, that rule of law was overruled in Stover v. Patrick, 459 S.W.2d 393, 401[7] (Mo. en banc 1970) and made retroactive in Dickey v. Nations, 479 S.W.2d 208, 210[2] (Mo.App., 1972). In neither of these cases was there a claim for property damages made; plaintiffs were seeking damages for personal injuries and the husband's loss of consortium and medical expenses incurred in behalf of his wife in separate counts in Stover; while in Dickey the wife alone was suing for her personal injuries only. It is not the mere husband-wife relationship upon which imputation of the negligence of the one to the other rests; it is the nature of the estate by entirety which brings about this result.

■■■■ In this State joint ownership of property, real or personal, by husband and wife creates a presumption of tenancy by the entirety. Cann v. M & B Drilling Company, 480 S.W.2d 81, 85[3] (Mo.App., 1972). When a conveyance of real estate is made to husband and wife they take, neither as joint tenants nor tenants in common, but by the entirety; i.e., they take the whole estate as one person. Gibson v. Zimmerman, 12 Mo. 385 (1849); Crosby v. United States, 298 F.Supp. 172, 173[1] (E. D.Mo.1969). They not only take the advantages of that tenancy, but also the disadvantages.

■■■■ With reference to the subrogee, its rights are limited to the rights the subrogors had, and contributory negligence on their part will also constitute a bar to recovery by the subrogee. 46 C.J.S. Insurance § 1209, p. 158, states that this is the

rule with respect to collision policies; it applies equally to the coverage furnished by the insuror here.

What has been said supra with respect to the imputation of Mrs. Holt's contributory negligence, if any, is equally applicable to Mr. Holt's claim for the hospital and medical expenses incurred by him as a result of the injuries sustained by Mrs. Holt. Missouri follows the rule that one spouse may not recover on his collateral claim for the injuries and medical expenses incurred if the injured spouse was contributorily negligent; this, because his claim is merely derivative. Huff v. Trowbridge, 439 S.W.2d 493, 498[3] (Mo.1969). Therefore, an instruction advising the jury with respect to Count III that Mrs. Holt's contributory negligence, if any, would be a bar to Mr. Holt's recovery on that count would be proper.

Because the instruction given was prejudicially erroneous in the manner heretofore set out we reverse and remand this case for a new trial.

The only point we have not disposed of is the contention of the Holts that the trial court erred in not granting a mistrial because of the testimony of Mr. Myers concerning the number of members in his family. It would be hoped that this would be avoided in the retrial of this case since it is obviously prejudicial and has been held to be so time and again.

SMITH, P. J., and SIMEONE, J., concur.