On Application for Rehearing in Case 1910762
The opinion of April 9, 1993, is withdrawn and the following is substituted therefor.
James W. Davis died on May 7, 1989. After his death, AmSouth Bank allowed Dorothy L. Davis, the widow, to withdraw $35,000 from an account. Mary E. Nelson, daughter of the deceased, sued AmSouth Bank, First National Bank of Mobile Division ("AmSouth"), seeking to recover the $35,000, alleging that AmSouth had improperly paid two checks totalling that amount to Dorothy L. Davis and alleging that the account from which the checks were paid was a demand deposit checking account that Nelson had owned with the deceased. Nelson maintained that that account was a joint account with right of survivorship with the deceased, and that the right of survivorship entitled her to all of the money in the account at the death of the deceased. In its answer, AmSouth, substantially admitting Nelson's allegations that it had improperly paid the money to Davis, maintained that it was unable to determine whether Nelson was the sole owner of the joint account through a right of survivorship. The trial court ordered AmSouth to pay $35,000 into the court. AmSouth, alleging breach of presentment warranties (Ala. Code 1975, § 7-3-417 and § 7-4-207) and claiming a right of subrogation (§ 7-4-407), cross-claimed against Davis to recover the $35,000 Davis had been improperly paid from the account. Frederick A. Marshall, executor of the estate of James W. Davis ("the Estate"), intervened in Nelson's suit against AmSouth, claiming that the Estate was entitled to one-half of the joint account proceeds AmSouth had paid into court.
On motions for summary judgment, the trial court entered a summary judgment awarding Nelson the $35,000 AmSouth had paid into court pursuant to the trial court's order, but directing the clerk of the court not to release the money until "after all appeals for any claim or cross-claim [were] exhausted or the time [to file such] appeal ha[d] run." The Estate appeals from that judgment. (Case: #1910577)
The trial court also entered a $35,000 summary judgment for AmSouth and against Davis on AmSouth's cross-claim. Davis appeals. (Case: # 1910762)
These cases have been consolidated for appeal.
 Case #1910577
The question in this case (1910577, Marshall v. Nelson) concerns the ownership of the joint account at issue. *Page 891 
Pursuant to Ala. Code 1975, § 35-4-7 ("Survivorship Between Joint Tenants"), ownership of the account is controlled by the intent of the parties:
 "When one joint tenant dies before the severance, his interest does not survive to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided, that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivorship or other words used therein showing such intention, then, upon the death of one joint tenant, his interest shall pass to the surviving tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or more other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated."
The law is clear. If an instrument is unambiguous and complete on its face, then unless it is stated in the instrument that the joint tenancy is with right of survivorship or other words are used therein to show such an intention, the predeceasing joint tenant's interest does not survive to the other joint tenant but descends and vests as if that interest had been severed and ascertained. See Leonard v. Beverly,563 So.2d 1026 (Ala. 1990).
Viewing the record in the light most favorable to the Estate, the nonmoving party, as required under our applicable standard of review,[1] we must take the facts to be as follows:
On December 31, 1982, James W. Davis made an initial deposit of $44,047.33 to the account at issue. The only signature card for that account available from AmSouth was dated October 8, 1984, approximately 22 months after the initial deposit; it showed the account owner(s) as "Mr. James W. Davis or Mary E. Nelson." The signature card contained the following language: "Each Owner [as listed on this account] is subject to all ofthe written rules and regulations governing deposit accounts . . . which are currently in force, and as [AmSouth] may amendthem from time to time." (Emphasis added.) The reverse side of the signature card reflected 8 different classes of accounts and 12 different types of accounts. Election of the proper class or type of account was designated by placing an "x" in a space to the left of the name of the account requested. No specific designation was noted on the signature card at issue.
In September 1988, a customer copy of bank rules and regulations ("A Customer Agreement for Depository Accounts") was mailed to each AmSouth customer at the address reflected on the account to which the statements were sent each month, stating in part as follows:
 "[B]y maintaining your account after receipt of this agreement, you agree to the terms in this agreement. Our agreement with you includes this customer agreement. . . . All these documents together are a contract between you and us.
". . . .
 "Right of Survivorship. All joint accounts are owned by parties as joint tenants with right of survivorship unless the signature card for the account clearly states otherwise. Upon the death of any joint owner, the account will be owned by the survivors as joint tenants with right of survivorship, or, if only one survivor remains, by the survivor individually, and we make payment to such survivor(s)."
(Emphasis added.) Although there is no evidence that James W. Davis read or otherwise had any knowledge of those rules and regulations, it is undisputed that the address to which the bank statements for this account were mailed was that of James W. Davis.
According to the Estate, it retained a one-half interest in the account because the *Page 892 
signature card creating the account was clear and unambiguous on its face and contained no specific designation that the account was with the right of survivorship.
According to Nelson, because the reverse side of the signature card, which offered numerous classes and types of accounts, contained no designation indicating that the account was with the right of survivorship, the signature card was incomplete and therefore ambiguous. Accordingly, says Nelson, parol evidence was admissible to prove the intent of the owners of the account and that evidence — the language on the signature card specifically stating that the account was "subject to all rules and regulations governing deposit accounts . . . currently in force, and as [AmSouth] may amend them from time to time," taken with the 1988 revised "Customer Agreement for Depository Accounts" — was sufficient to establish, as a matter of law, that the account was with survivorship rights.
In this case, the failure to designate the type or class of account created an ambiguity in the instrument. See Parr v.Godwin, 463 So.2d 129 (Ala. 1984), and Lansford v. Gorham,591 So.2d 63 (Ala. 1991). Because of that ambiguity, we look to the extrinsic evidence presented to determine the intent of the owners of the account.
The language on the signature card clearly apprised account owners that the account was subject to the rules and regulations promulgated by AmSouth at the time the account was opened and was subject to those rules and regulations "as amended." Although the language in the bank rules and regulations "as amended" governing the payment to Nelson as the surviving account owner was "not literally an express grant of a right of survivorship, [that] language [did] indicate an intention consistent with the creation of a joint tenancy with right of survivorship." See Lansford v. Gorham,591 So.2d at 65.
In this case, Nelson presented no corroborating evidence that James W. Davis intended to create a joint tenancy with right of survivorship — no evidence that the right of survivorship was explained to him when he opened the account; no evidence that he had told anyone that he intended to create a right of survivorship; no evidence of his love for Nelson; and no evidence that he wanted Nelson to have the money in the account. See Saxon v. Pickett, 601 So.2d 955 (Ala. 1992), in which this Court, affirming on the authority of Lansford, held that the terms on the reverse side of the certificate of deposit, which set "out the bank's policies [were] analogous to the signature card in Lansford," and also held that "there was corroborating evidence that [the deceased] had intended the certificate of deposit to provide for joint tenancy with the right of survivorship." See, also, Lansford v. Gorham, supra;Parr v. Godwin, 463 So.2d 129 (Ala. 1984). Rather, the only evidence Nelson presented was that she was not present when the deceased made the initial deposit; that she never had any conversation or correspondence with the deceased about the account other than conversations and correspondence with him in 1974, 10 years before the date on the account signature card; and that she did not remember signing the signature card in 1984 or having any conversation with James W. Davis about the card.
Because there was no corroborating evidence that James W. Davis intended to create a joint tenancy with the right of survivorship, we hold that upon his death the Estate was entitled to one-half of the funds in the account. Therefore, we reverse the trial court's judgment awarding Nelson the entire proceeds of the joint account and remand for further proceedings consistent with this opinion.
 Case # 1910762
In case 1910762 (Davis v. AmSouth Bank, N.A.), the trial court entered a summary judgment for AmSouth against Dorothy L. Davis on AmSouth's claims that Davis breached the presentment warranties (Ala. Code 1975, § 7-3-417(1) and § 7-4-207(1)), and that AmSouth was subrogated to the rights of Nelson and/or the Estate (Ala. Code 1975, § 7-4-407). *Page 893 
The evidence pertinent to these claims, when viewed in the light most favorable to Davis, as the applicable standard of review requires us to review them, suggests the following:
James W. Davis had discussed with his wife Dorothy L. Davis plans to give her $35,000 to fix up the house they lived in, to buy his daughter Karyn an automobile, and to help with expenses for Karyn's schooling, including tuition. As he customarily did, he asked Dorothy Davis to write the checks, which had been stamped with his signature. After she wrote the checks, she handed them back to him for his approval. She then took the checks, but misplaced them until after her husband died. When she finally found the checks, she deposited them in her account at First Alabama Bank, without knowing that the Estate had notified AmSouth of James W. Davis's death. The checks cleared through normal banking channels and were electronically posted against James W. Davis's account at AmSouth. She used the money as her husband had requested — for repairs to the house, for Karyn's car, and for Karyn's tuition.
Upon the death of James W. Davis, one-half of the money in the account ($17,500) belonged to the Estate and the other one-half ($17,500) belonged to Nelson. (See the resolution of case # 1910577 and the discussion pertinent thereto.) Because AmSouth had mistakenly paid Dorothy Davis the money from the account after it had received notice of death, it paid the $35,000 into court pending the trial court's determination of the ownership of the funds in that account. By paying this money into court, AmSouth in essence restored the money to the account. It then sued Dorothy Davis to recover the money, under theories of breach of presentment warranties (§ 7-3-417 and § 74-207(1)) and subrogation (§ 7-4-407). AmSouth and Dorothy Davis moved for summary judgment. The trial court denied Davis's motion but granted AmSouth's motion.
Section 7-3-417 reads in pertinent part as follows:
 "(1) Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that:
 "(a) He has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title; and
 "(b) He has no knowledge that the signature of the maker or drawer is unauthorized . . .
 "(c) The instrument has not been materially altered. . . ."
Section 7-4-207 reads in pertinent part as follows:
 "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:
 "(a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and
 "(b) He has no knowledge that the signature of the maker or drawer is unauthorized . . .
 "(c) The item has not been materially altered. . . ."
These warranty provisions are inapplicable to the facts in this case, and we pretermit any discussion of those sections.
However, AmSouth claims to have been subrogated to certain rights of the drawer pursuant to § 7-4-407 and therefore claims that it was entitled to recoup the money it erroneously paid Davis so as to prevent any unjust enrichment to Ms. Davis and loss to AmSouth.
According to Ms. Davis, AmSouth did not establish that, as a matter of law, she had been unjustly enriched by the $35,000 payment, and therefore, she says, it was not entitled to a summary judgment awarding subrogation under § 7-4-407. Ms. Davis says her evidence created a genuine issue of material fact on the issue of unjust enrichment, because, she says, her evidence indicated that she "spent the money *Page 894 
exactly as her husband, the drawer of the check, told her to spend it: for house repairs, the daughter's tuition, and the daughter's car."
Section 7-4-407 reads, in pertinent part, as follows:
 "If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights:
". . . .
 "(c) Of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."
(Emphasis added.) As one commentator stated, "The . . . idea behind [§ 7-4-407] is [that when] the bank has made an improper payment, e.g., paid over a missed stop order, someone is ahead of the game and the bank ought to be able to get the cash from someone to cover the check." 2 Thomas M. Quinn, Quinn's UniformCommercial Code Commentary and Law Digest 4-215 (1991).
In this case, if AmSouth is entitled to be subrogated to the rights of another, then from the clear language of the statute it is entitled only to be subrogated "to the rights . . . [o]f the drawer . . . against the payee." Thus, in this case AmSouth could be subrogated only to the rights of the Estate against Ms. Davis.
From our review of the record, we conclude that AmSouth failed to establish that Dorothy Davis was, as a matter of law, unjustly enriched. Therefore, the trial court erroneously entered the summary judgment for AmSouth. We must reverse the summary judgment and remand the cause for the trial court to determine whether Ms. Davis was unjustly enriched.
Because AmSouth may be entitled to subrogation under §7-4-407, Ms. Davis's argument under § 7-3-418 is not now relevant — because § 7-3-418 is premised upon the words, "Except for recovery of bank payments as provided in [Article 4]."
1910577 OPINION WITHDRAWN; OPINION SUBSTITUTED; REVERSED ANDREMANDED.
1910762 OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATIONOVERRULED; REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON and SHORES, JJ., concur.
[1] This action was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence" rule. See Ala. Code 1975, § 12-21-12; West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870 (Ala. 1989).