**ROOSEVELT BANK, A Federal Savings Bank, Respondent,**

v.

**Mary Ann MOORE, f/k/a Mary Ann Lolley, Appellant.**

No. 70170.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 15, 1997.

1. All further statutory references are to RSMo 1994.

Frank Kimberly Carlson, Union, for appellant.

Gregory Francis Hoffmann, St. Louis, for respondent.

CRAHAN, Presiding Judge.

Mary Ann Moore ("Wife") appeals the judgment entered following a bench trial in favor of Roosevelt Bank ("Bank") on its petition to recover $5,500.00 erroneously paid to Wife from her then husband's individual savings account. We reverse.

The case was submitted to the court on stipulated facts. Wife and James Lolley ("Husband") were married in 1982. In June, 1994, Husband opened an Individual Pay on Death Savings Account at Bank. Wife was designated as the pay on death beneficiary of the account. All deposits in the account from the date it was opened until January 6, 1995 were made solely from monies received during the period of the marriage other than by gift, inheritance, bequest or devise.

On September 11, 1994, Husband and Wife separated. On September 13, 1994, Wife signed and presented to Bank two withdrawal slips totaling $5,500.00 designating Husband's individual savings account as the account from which the money was to be withdrawn. At the time of these withdrawals, Wife believed she was entitled to make withdrawals from the account. Documents pertaining to the account had previously been delivered to the marital home addressed to "JAMES T. LOLLEY, POD MARY ANN LOLLEY." Wife believed the code "POD" meant "pay on demand." Wife made no misrepresentations to Bank, its agents or employees, to Husband, or to anyone else concerning the withdrawals.

Wife deposited the funds withdrawn from Husband's individual savings account in two joint accounts owned by Husband and Wife. A few days later, on September 17, 1994, Wife used these funds to purchase a used Nissan automobile. Husband was aware of Wife's purchase of the automobile.

On October 1, 1994, Bank mailed statements reflecting Wife's withdrawals to Husband at the marital home address. He received the statement on October 2, 1994 but did not read it and was unaware of its contents until on or after January 6, 1995.

On October 4, 1994, Wife filed her petition for dissolution of marriage. Husband entered his appearance in writing on October 13, 1994 and voluntarily submitted to the jurisdiction of the court. However, Husband did not file a responsive pleading, nor did he appear at the hearing on the merits, which was held on December 22, 1994. The trial court entered its judgment and decree of dissolution that same day.

In its judgment, the trial court found that the parties were in agreement as to the disposition of marital property. The agreement was admitted into evidence and expressly found not to be unconscionable. Pursuant to the agreed disposition of property, Wife was awarded the used Nissan automobile and Husband was awarded his individual savings account at Bank. Husband agreed that the Nissan automobile would be awarded to Wife in the dissolution action and was thereafter aware that this had occurred.

On January 6, 1995, Husband made a deposit to his individual savings account at Bank and noticed a substantial discrepancy in the account balance. Husband asked Bank to investigate and explain the discrepancy. On January 18, 1995, Bank advised Husband of the withdrawals made by Wife.

Husband demanded that Bank reimburse him for the withdrawals.

On January 19, 1995, Bank demanded that Wife return the withdrawn funds, froze her remaining accounts at Bank and threatened legal action. That same day, counsel for Wife denied Bank's claim for reimbursement claiming the withdrawn funds were marital property in which Wife had a legitimate interest. Counsel further demanded that Wife's accounts be released by Bank.

The next day, Bank by fax advised Wife that her remaining bank account at Bank was unfrozen "based upon [Wife's counsel's] legal representation that [Wife] had the right to withdraw" the funds as aforesaid. Bank, however, reserved the right "to bring a third party action against [Wife] in the event [Husband] files suit against the bank to recover the withdrawals."

On January 23, 1995, Bank denied Husband's demand and advised him in writing that the account was the marital property of Husband and Wife, that Wife had a right to the funds withdrawn, and that Bank had acted properly in allowing Wife to make such withdrawals.

On January 24, 1995, pursuant to the judgment and decree of dissolution, Husband executed in favor of Wife a gift affidavit for the Nissan automobile awarded to Wife.

On January 27, 1995, Husband's counsel advised Bank that the withdrawals by Wife were made without his knowledge or consent and again demanded that Bank reimburse him for such withdrawals together with interest lost thereon.

On February 15, 1995, Husband executed and delivered to Bank a Loss Affidavit. Upon receipt of Husband's Loss Affidavit, Bank reimbursed Husband by check for the withdrawals, with interest thereon, in the sum of $5,559.87.

Thereafter, Bank demanded that Wife return the withdrawals. When Wife refused, Bank filed suit to recover the funds in two counts. In Count I, Bank asserted that pursuant to the provisions of § 400.4–407 RSMo 1994, it was subrogated to the rights of Husband to recover the unauthorized withdrawals in order to prevent unjust enrichment.

In Count II, Bank alleged that Wife was indebted to Bank for the amount of the withdrawals had and received in that the funds were paid to Wife by mistake and Wife would be unjustly enriched if allowed to retain them.

Based on the foregoing stipulated facts, the trial court found that Bank was entitled to judgment on Count I of the petition and rendered judgment in favor of Bank and against Wife in the amount of $5,559.87. This appeal followed.

■ Because this is a court-tried case, the decree or judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Matter of Waldron,* 910 S.W.2d 837, 838 (Mo.App.1995); Rule 73.01(c). Further, we must uphold the judgment under any reasonable theory pleaded and supported by the evidence. *Whiteside v. Rottger,* 913 S.W.2d 114, 119 (Mo.App.1995).

■ In her first point, Wife urges that § 400.4–407 RSMo 1994 does not create a statutory right of subrogation for money paid from an account by mistake. Section 400.4–407 RSMo 1994 provides:

**400.4–407. Payor bank's right to subrogation or improper payment**

If a payor bank has paid an item over the order of the drawer or maker to stop payment, or after an account has been closed, or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank is subrogated to the rights

(1) of any holder in due course on the item against the drawer or maker;

(2) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and

(3) of the drawer or maker against the payee or any other holder of the item with

respect to the transaction out of which the item arose.

We need not reach or decide whether the foregoing provision may, under other circumstances, create a right of subrogation for money paid from an account by mistake because the statute does not, by its express terms, apply to the situation presented here. Even assuming *arguendo* that the stipulated facts constitute "circumstances giving a basis for objection by the drawer or maker," the statute only purports to subrogate Bank to the rights of (1) a holder in due course against the drawer or maker, (2) the payee or holder against the drawer or maker, or (3) the drawer or maker against the payee or other holder. In this case, Husband was neither a "drawer," "maker," "payee," "holder" or "holder in due course." Aside from being the account owner, he had nothing to do with the transaction.[1] Wife was the drawer, maker and payee. Bank does not claim that Wife had any claim against herself to which it could have been subrogated. Thus, § 400.4–407 RSMo 1994 does not create any right of subrogation in Bank under the circumstances established by the stipulated facts and the judgment in favor of Bank on Count I was erroneous as a matter of law.[2]

Bank urges that even if § 400.4–407 does not give it a statutory right to subrogation, we must still affirm the judgment if it is correct under any theory pled and supported by the evidence. *Whiteside*, 913 S.W.2d at 119. Bank claims the judgment can be sustained pursuant to its alternative claim for money had and received. We disagree.

Missouri recognizes a common law action for money had and received when money is inadvertently or mistakenly paid to one who would be unjustly enriched if allowed to retain it. *Blue Cross Health Ser-*

*vices v. Sauer*, 800 S.W.2d 72 (Mo.App.1991). In this case, however, the money had and received was Husband's, not Bank's. Bank's claim arises, if at all, by subrogation. Bank, however, did not plead it was entitled to subrogation on any basis other than § 400.4–407 RSMo 1994, which we have found to be inapplicable. Further, assuming for purposes of argument that Bank's pleading may be construed to encompass a theory of common law subrogation, Bank's rights as subrogee would be no broader than Husband's as subrogor. *Holt v. Myers*, 494 S.W.2d 430, 444 (Mo.App.1973). As Wife points out, Husband could not maintain an action against Wife for money had and received because, *inter alia*, the account in question as well as the vehicle purchased with funds from the account were adjudicated to be marital property and allocated between Husband and Wife in their dissolution action. Husband acquiesced in that judgment when he allowed it to become final and executed the affidavit of gift required by the judgment despite his knowledge of Wife's actions. In effect, Husband ratified the transaction. Any attempt by Husband to relitigate Wife's entitlement to the funds in question would be barred as *res judicata*. Because Bank's rights as subrogee could be no greater than Husband had as subrogor, Bank's claim is similarly barred. Likewise, in view of Husband's implicit ratification, Wife cannot fairly be said to have been "unjustly enriched."

Judgment reversed.

GRIMM and HOFF, JJ., concur.

---

1. This is what distinguishes the instant case from *Marshall v. Nelson*, 622 So.2d 889 (Ala.1993), the authority relied upon by Bank. In *Marshall*, the drawer/maker was the deceased husband who executed two checks payable to his wife that were cashed by the bank after his death. Under such circumstances, the court found that the bank was potentially entitled to be subrogated to the rights of the drawer (husband) against the payee (wife). 622 So.2d at 894.

2. Bank's rights vis-a-vis Wife appear to be governed by § 400.3–418 RSMo 1994. Bank, however, never asserted that provision as a basis for relief and we express no opinion as to the applicability of such provision or Wife's potential defenses set forth in § 400.3–418(c). Nor, in view of our disposition, need we decide whether § 400.3–418 is Bank's exclusive means of obtaining restitution. *Cf.* UCC Comment on Section 400.3–418 at Vol. 20B, VAMS, pp. 249–50, paragraph 1.